MURRAY'S CASE.

Penobscot.      Opinion April 11, 1931.

*A. L. Thayer*, for petitioner.
*E. F. Littlefield*,
*William B. Mahoney*,
*Theodore Gonya*, for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

PATTANGALL, C. J.   On appeal from decree of single Justice, affirming decree of Industrial Accident Commission, dismissing petition under Workmen's Compensation Act.

It is agreed that petitioner sustained a serious injury, arising from an accident occurring while he was engaged in unloading coal for Oldtown Woolen Co., Inc., an assenting employer; that the injury was received in the course of his employment and arose out of his employment; and that the employer had due knowledge or notice of the facts.

The sole issue is whether petitioner was, at the time of receiving the injury, an employee of the Company within the meaning of the Act, or was an independent contractor.

Petitioner was at the time of the accident, and had been for many years, in the general employ of the respondent corporation. His work was not confined to any particular line. He is described as an "odd-job" man. He did not work steadily, although from early spring until the coming of winter he worked nearly every day. A portion of the time, the work was on property of the manager of the corporation but when this was the case, he was paid at the Company office and, so far as he knew, there was no distinction made with regard to who benefited by his labor.

There was one particular job that he always attended to. He participated in unloading the coal which came on cars to respondent's mill and supervised those who assisted in this work. It sometimes happened that he worked a portion of the day unloading coal and a portion of the day at other jobs. For his general labor, he received a wage of $3.50 per day, and at the beginning the unloading of the coal was paid for at the same rate. Later an arrangement was made by which he handled the coal on a basis of twenty cents per ton, out of which he paid the men who assisted him in unloading, and the Company paid those who did what was designated as "trimming," that is, levelling off the piles of coal after unloading.

The Company provided a machine used in unloading and shovels for the men. Petitioner engaged his helpers, fixed their wage scale and, presumably, could discharge them if and when he pleased.

The case shows that whenever coal arrived, regardless of what he was doing at the time, petitioner having been notified of the fact assembled his men and proceeded to unload the cars as rapidly as possible, in order to prevent demurrage charges from accumulating. The only orders he received from the Company with regard to the details of unloading were directions as to where in the yard the coal should be piled.

There was no agreement between petitioner and respondent fixing any definite period of employment. He assumed no obligation either to unload any number of cars or to unload all of the cars which arrived between particular dates. He could cease work at any time and the Company could discharge him at any time, with or without cause. In neither case could an action for damages for breach of contract have been maintained. The contractual rela-

tions between the parties with regard to the unloading of the coal appear to have consisted of nothing more than a mutual understanding that so long as he remained in respondent's employ, he would attend to that work, under the conditions already stated, no restriction being placed upon either party which would prevent the abandonment of the arrangement at any time on a moment's notice.

The Commission determined that petitioner was an independent contractor. We can not agree with that conclusion nor do we deem it one that can be said to be reasonably deducible from the evidence.

"Where the facts presented with respect to the relation of an employer and employee are as consistent with the relation of agency as with that of independent contractor, one asserting the existence of the latter relation has the burden of proof." *Dishman* v. *Whitney* (Wash.), 209 Pac., 12.

"In an action against an employer for injuries, a presumption arises that a person working on the defendant's premises and performing work for the benefit of the defendant was a mere servant; and if the defendant seeks to avoid liability on the ground that such person was an independent contractor, the burden is on him to show the fact." *Dobson's Case*, 124 Me., 309.

The facts are not in dispute. When such is the case and but one reasonable conclusion is inferable, the question of relationship is one of law and is open on review. *Clark's Case*, 124 Me., 50.

An employee as defined in the Workmen's Compensation Act is "a person in the service of another, under any contract of hire, express or implied, oral or written."

"An independent contractor is one who carries on an independent business and in the line of his business is employed to do a job of work in the doing of which he does not act under the direction or control of his employer but determines for himself in what manner the work shall be done." *McCarthy* v. *Second Parish*, 71 Me., 318; *Keyes* v. *Baptist Church*, 99 Me., 308; *Mitchell's Case*, 121 Me., 455.

"An independent contractor is one who exercising an independent employment contracts to do a piece of work according to his own methods and without being subject to the control of his employer

except as to the result of the work." 2 Words and Phrases, 2nd Ed., 1034.

"One who contracts with another to do a specific piece of work for him and who furnishes and has the absolute control of his assistants and who executes the work entirely in accord with his own ideas or with a plan previously furnished by the person for whom the work is done without being subject to the latter's orders as to the details of the work, with absolute control thereof, is not a servant of his employer but is an independent contractor." *Brown* v. *Smith* (Ga.), 22 Am. St. Rep., 463.

Authorities are numerous and uniform that the vital test is to be found in the fact that the employer has or not retained power of control or superintendence over the employee or contractor. "The test of the relationship is the right to control. It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and a servant or agent." *Tuttle* v. *Embury-Martin Lumber Co.* (Mich.), 188 N. W., 878. There is no conflict as to this general rule, but the results reached in its application to particular cases are most contradictory. It is often extremely difficult to distinguish between one who may properly be termed an independent contractor and one who is simply an employee. *Clark's Case*, supra; *Dobson's Case*, supra.

Allowing all possible latitude for the varying facts and circumstances which distinguish and characterize the reported cases, the decisions have often been in direct conflict and precedents may be found on both sides of almost every conceivable situation in which the question could arise.

"No hard and fast rule can be made as to when one undertaking to do work for another is an independent contractor or an employee within the meaning of a Workmen's Compensation Act, but each case must be determined on its own facts." *Ruby Arthur* v. *School District* (Ia.), 228 N. W., 70.

In applying the general principles of law governing the relations of master and servant to cases involving Workmen's Compensation, it should be kept in mind that by explicit legislative mandate the provisions of the Act are to be liberally construed. *Wardwell's Case*, 121 Me., 216.

Commonly recognized tests of the relationship in issue, although not necessarily concurrent or each in itself controlling, are (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

An independent contractor must have under the employment some particular task assigned to him which he has a right to complete and is under obligation to complete, and must be subject to no control in the details of its doing.

"Among the circumstances which bear strongly upon the question of whether one is an independent contractor or agent or servant, is the existence of a contract for the performance of certain work at a fixed price." *Mattocks* v. *Emerson Drug Co.*, 33 S. W., 2nd Series, 145.

"If the workman is using the tools or equipment of the employer, it is understood and generally held that the one using them, especially if of substantial value, is a servant." *Mallinger* v. *Webster City Oil Co.* (Ia.), 234 N. W., 254.

"The furnishing of tools by the employer is a circumstance denoting a contract of service rather than of independent employment." *Kelley's Dependents* v. *Hoosac Lumber Co.*, 95 Vt., 50.

"The measure of compensation is important, for where it is based upon time or piece, the workman is usually a servant; and where it is based upon a lump sum for the task, he is usually a contractor." *Industrial Comm.* v. *Hammond* (Colo.), 236 Pac., 1006.

In *Norton* v. *Day Coal Company* (Iowa), 180 N. W., 950, the Court says, "If I hire Smith to plow for me at $4.00 per acre, he is my servant. If Smith agrees to plow my twenty acres at $4.00 per acre, and I agree to pay him that sum for it, he is an independent contractor."

"The term 'independent contractor' presupposes the existence

of a binding contract between the parties, for the breach of which a cause of action arises. There can be no relationship of 'independent contractor' without the existence of such binding contract between the parties." *Snodgrass* v. *Cleveland Co-op. Coal Co.* (Ohio Ct. App., 1929), 167 N. E., 493, at 496.

One of the means of ascertaining whether or not the right to control exists is the determination of whether or not if instructions were given they would have to be obeyed. It was held in *Western Metal Supply Co.* v. *Pillsbury* (Cal.), 156 Pac., 491, "The real test by which to determine whether the person is acting as the servant of another is to ascertain whether at the time when the injury was inflicted he was subject to such person's orders and control and liable to be discharged by him for disobedience."

Our Court has said in *Dobson's Case*, supra, that the right to discharge the employee at will is not, taken alone, the decisive test as to whether or not he is an independent contractor, but that fact strongly tends to establish the relationship.

"The power of an employer to terminate the employment at any time is incompatible with the full control of the work usually enjoyed by an independent contractor." *Bowen* v. *Gradison Construction Co.* (Ky., Oct., 1930), 32 S. W., 2nd Series, 1016.

"No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service when he chooses without regard to the final result of the work itself." *Cockran* v. *Rice* (S. Dak.), 128 N. W., 583.

"The power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists. While it is not the sole test, it is the best test upon the question of control." *Messmer* v. *Bell* (Ky.), 117 S. W., 348.

"By virtue of its power to discharge, the company could at any moment direct the minutest detail and method of the work. The fact that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor." *Franklin Coal & Coke Co.* v. *Ind. Comm.* (Ind.), 129 N. E., 811.

"The most important point in determining the main question

(contractor or employee) is the right of either to terminate the relation without liability." *Industrial Comm.* v. *Hammond,* supra; *Ind. Com.* v. *Bonfils* (Colo.), 241 Pac., 735; *Barclay* v. *Puget Sound Lumber Co.* (Wash.), 93 Pac., 430; *Nyback* v. *Champagne Lumber Co.*, 109 Fed., 732; *Evans* v. *Dare Lumber Co.* (N. C.), 93 S. E., 430.

The only fact, in the instant case, which has the slightest tendency to uphold the contention that petitioner was an independent contractor is the hiring by him of the men who assisted in unloading the coal. In view of all the other circumstances of his employment, the conclusion of the Commission that this incident affected his status as an employee is unwarranted either by reason or law. The reasonable inference is that in that respect he acted as agent of his employer.

No contract existed between petitioner and respondent for the performance by the former of a certain piece or kind of work at a stated price; all of the tools and appliances used on the job were furnished by the employer; petitioner was paid by the ton, not by the job; the work was a part of the regular business of the employer; petitioner was, at the time the accident occurred, subject to the employer's orders and instructions; respondent had the right to discharge him at will without incurring liability for breach of contract.

In the light of these facts, it is impossible to resist the conclusion that the right to control any and every detail of the work rested absolutely with the employer.

*Appeal sustained.*
*Decree reversed.*
*Court below to fix employee's expense on appeal.*