LEWISTON DAILY SUN

v.

**HANOVER INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Oct. 25, 1979.

Marshall, Raymond, Beliveau, Dionne & Bonneau by John B. Beliveau, Paul R. Gosselin, Lewiston, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Ronald D. Russell (orally), Portland, for defendant Hanover Ins. Co.

Irving Friedman, Lewiston, for Maurice & George James.

Platz & Thompson, P. A. by J. Peter Thompson, Lewiston, for Michigan Millers Mut. Ins.

Before McKUSICK, C. J., POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ., and DELAHANTY, A. R. J.

POMEROY, Justice.

This is an appeal from a decision in an action for Declaratory Judgment. The plaintiff-appellant is the Lewiston Daily Sun (Sun), a corporation engaged in the publication and distribution of newspapers. The defendant, Hanover Insurance Company (Hanover) issued to Sun as the named insured a liability insurance policy with certain endorsements. The complaint sought a Declaratory Judgment against Hanover that Hanover was obliged by its insurance contract to defend, and in the event of an adverse judgment, to indemnify Sun for its liability, if any, arising from an action by one James to recover damages for personal injury. After hearing, the Superior Court Justice ruled that Hanover was obligated to defend the pending action, but was not obligated to indemnify Sun for any damages paid to satisfy the claim of James.

Both Hanover and Sun filed notices of appeal. Thereafter, the parties filed a stipulation that the underlying negligence action had been settled, thus mooting Hanover's appeal.[1]

We sustain Sun's appeal.

On November 9, 1973, Maurice James, a newsboy for Sun, sustained severe injuries when he fell from the rear of a 1971 Chevrolet El Camino, owned and operated by William McCarthy. At the time of the accident, the El Camino was being used to distribute newspapers published by Sun to various *"drop points"* where they were to be picked up by newsboys for delivery.

The circumstances surrounding how McCarthy's El Camino came to be used for the distribution of newspapers are not in dispute.

Since 1945, Sun has had a contractual arrangement with J. Guy Bryant for the delivery of its two publications, the Sun and the Evening Journal. Previous to this agreement, Sun had owned its own trucks and had employed individuals for this purpose. Under the terms of their agreement, Bryant employs drivers and provides vehicles to carry Sun's newspapers to designated *"drop points"*. Sun compensates Bryant weekly at a set rate per mile. No amount is withheld for taxes or social security. Bryant's drivers are ordinarily accompanied on their routes by a so-called *"team captain"*, a Sun employee who oversees the loading of the newspapers, and who is responsible for their unloading at the proper points. Sun requires only that the deliveries be made efficiently, allowing Bryant to take shortcuts or to transport other materials.

In August 1973, McCarthy, who had at one time been employed by Sun as a *"team captain"*, began work as a substitute for one of Bryant's regular drivers. When mechanical problems developed with the delivery vehicle ordinarily used for the route, McCarthy began to use his El Camino for the deliveries. For his services and for the use of his vehicle, McCarthy was compensated by Bryant directly or by the regular driver.

At the time Maurice James sustained his injuries, McCarthy was accompanied by a *"team captain"* who was riding as a passenger in the automobile.

James, a minor at the time of the accident, and his father filed a complaint

---

1. The stipulation for dismissal of the action by James expressly declared *"that the sole remaining claim in the instant action be the claim* *of Lewiston Daily Sun that it is entitled to indemnification from Hanover Insurance Company."*

against McCarthy and Sun seeking damages for bodily injury. In addition to alleging negligence by McCarthy, the complaint alleged that Sun, by its agents, servants, and employees, was negligent in the operation of the vehicle and in the loading and unloading of the newspapers. When Hanover refused to defend or indemnify Sun, Sun instituted the declaratory judgment action which is the subject of this appeal.

After hearing, the presiding Justice ruled,

> that the Defendant, Hanover Insurance Company shall not be liable or responsible to indemnify the Lewiston Daily Sun for any judgment which Maurice and George James may recover against it in the present pending action containing the allegations as they now exist . . . ."[2]

In so ruling, the court found that the circumstances under which the El Camino was operated at the time of the accident fell within an exclusion of the Comprehensive General Liability Insurance Endorsement[3] issued by Hanover. The court then considered whether supplemental coverage was available to Sun under the Employer's Non-Ownership Automobile Liability Insurance Endorsement.[4] The court determined that, by the terms of that endorsement, Sun's liability for the injuries sustained by Maurice James was not an insured risk.

The Superior Court Justice made no factual findings in support of his initial conclusion that Sun was not insured under the general liability endorsement. Instead, the court accepted the factual allegations in the negligence complaint as *true* for the purpose of ascertaining the insurer's duty to indemnify Sun. The underlying negligence complaint against Sun alleged that McCarthy was operating the motor vehicle as the agent, servant and employee of Sun on the business of Sun. The general liability endorsement specifically excluded coverage for bodily injury caused by any automobile operated by an employee in the course of his employment.

In making the ruling, the presiding Justice misapplied the rule this Court laid down in *American Policyholders' Insurance Company v. Cumberland Cold Storage*, Me., 373 A.2d 247 (1977). Therein we adopted the majority view that *"the pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than on the facts as they actually are."* *Id.* at 249. We went on to state, however, that *"[w]hereas the duty to de-*

---

2. The presiding Justice also ruled

 *that Hanover Insurance Company shall defend the pending action of Maurice R. James and George R. James against Lewiston Daily Sun, on behalf of Lewiston Daily Sun, without incurring any liability to indemnify or re-imburse Lewiston Daily Sun for any judgment against it which may result from that action.*

 It was further ordered that the cost of defending Lewiston be prorated between Hanover and McCarthy's liability insurer, Michigan Millers Mutual Insurance Company.

3. The Comprehensive General Liability Endorsement states that

 *The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . . .*
 *This insurance does not apply:*

 . . . . .

 *(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of*

*(1) any automobile or aircraft owned or operated by or rented or loaned to the named insured, or*
*(2) any other automobile or aircraft operated by any person in the course of his employment by the named insured.*

4. The Non-Ownership Automobile Liability Insurance Endorsement provides in pertinent part:

 *The Company will pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of:*
 *bodily injury or property damage*
 *to which this insurance applies caused by an occurrence and arising out of the use by any person, other than the named insured, of a non-owned private passenger automobile in the business of the named insured, or arising out of the use in such business by an employee of the named insured of any non-owned commercial automobile if the use of such commercial automobile is occasional and infrequent . . . .*

*fend depends only upon the facts as alleged to be, the duty to indemnify, i. e., ultimate liability, depends rather upon the true facts.*" *Id.* at 250 (emphasis added).

We have determined, after reviewing the record for the "*true facts*", that the presiding Justice's finding that McCarthy was operating the El Camino at the time of the accident as an employee of Sun is clearly erroneous. The record on appeal reveals that McCarthy was an employee of Bryant, who in turn provided his newspaper delivery service to Sun as an independent contractor.

The right to control the details of performance is the crucial factor in determining the status of an individual who performs services for another. *Poulette v. Herbert C. Haynes, Inc.*, Me., 347 A.2d 596 (1975). On this issue, the evidence reveals that Bryant:

(1) had a contract with Sun for the delivery of newspapers at a fixed price;

(2) performed this service as a business distinct from Sun's publication processes;

(3) had the obligation to employ drivers, and the right to supervise their activities;

(4) had the obligation to furnish necessary vehicles;

(5) was compensated at a fixed rate per mile rather than at an hourly rate;

(6) had the right to control details of the work except as to final result.

*See Murray's Case*, 130 Me. 181, 186, 154 A. 352, 354 (1931).

The only fact in the instant case which has a tendency to support the contention that McCarthy was an employee of Sun is the presence of the Sun "*team captain*" in the El Camino at the time of the accident. We have held, however, that when weighing evidence to determine an individual's status as employee or independent contractor, no single factor is controlling. *Murray's Case, supra.*

Testimony of Mr. Whittier, general manager of Sun, indicates that the "*team captain's*" function is to be responsible for certain newsboys, and to supervise the loading and unloading of the newspapers. His authority over Bryant's drivers is limited to assuring an expeditious delivery of Sun's newspapers to the appropriate locations. In *Gall v. Detroit Journal Co.*, 191 Mich. 405, 158 N.W. 36 (1916), the relation of a newspaper deliveryman to the publisher was held to be that of independent contractor, despite the fact that the places to which the deliveries were made and the persons to whom the papers were delivered could be changed from day to day. The court concluded that "*[t]he right, on the part of the company, to designate the persons and places was but a right to designate the result to be obtained, and did not give the company any control over the method for obtaining that result.*" *Id.* 158 N.W. at 37.

Our determination that the Superior Court Justice's finding, that McCarthy was a Sun employee, is clearly erroneous is supported further by Mr. Whittier's testimony that "*McCarthy was not hired by us to drive the vehicles.*" Significantly, the presiding Justice stated at hearing that, absent the finding he erroneously believed to be compelled by *Cumberland Cold Storage, supra*, he was satisfied that there was, in fact, "*an independent contractual relationship.*"

In light of our determination that McCarthy was the employee of an independent contractor, we must now review the terms of the two relevant endorsements to the Hanover policy to ascertain whether coverage does, in fact, exist. We find the terms of the first endorsement controlling.

The first endorsement, for comprehensive general liability, insures Sun against liability for bodily injury arising out of the operation or use of an automobile, unless the automobile is

(1) owned, operated, loaned to or rented by Sun, or

(2) is operated by one of Sun's employees during the course of his employment.

As to the first criterion for exclusion, the presiding Justice properly found that Sun

did not *"own"* the El Camino.[5] The evidence is undisputed that the El Camino was owned by McCarthy personally.

█ It is equally clear that the vehicle was not being *"operated"* by Sun at the time of the accident. In *Allstate Insurance Co. v. Lyons*, Me., 400 A.2d 349, 352 (1979), we quoted with approval the explanation of the New Jersey Supreme Court that

. . . *the words* use *and* operation *are not synonymous. The* use *of an automobile denotes its employment for some purpose of the user; the word* operation *denotes the manipulation of the car's controls in order to propel it as a vehicle.* . . . *(emphasis in original). Indemnity Insurance Co. v. Metropolitan Casualty Insurance Co. of New York*, 33 N.J. 507, 166 A.2d 355, 358 (1960).

Although Sun was a *"user"* of the El Camino at the time of the accident, because a *"team captain"* was riding as passenger, McCarthy was the actual *"operator"*. As we previously determined, McCarthy was the employee of an independent contractor, and was not acting as an agent, servant or employee of Sun when Maurice James sustained his injuries.

Both parties agree there is no evidence in the record to support a finding that the El Camino was *"loaned"* to Sun. Hanover asserts, however, that the vehicle was *"rented"* to Sun, arguing that Sun contracted for the exclusive use of the El Camino, as well as other vehicles, for designated periods of time on a daily basis.

██ A rental of personal property is a contract whereby one gives temporary possession and control of the subject property to another for a consideration. It cannot be said that Sun rented the El Camino directly from its owner McCarthy. The record on appeal makes clear that there was no contractual relationship between McCarthy and Sun. The delivery contract between Bryant and Sun did not specify the vehicles to be used. Testimony indicates that the drivers had discretion as to how they drove the routes, and were permitted to transport *"any other thing along with it"*. McCarthy was not compensated by Sun for the use of his vehicle, but was paid either by Bryant or by the regular driver.

█ Neither can it be said that Sun rented the El Camino on the basis that it may have been rented by its independent contractor. Based on the California decision, *Rice Bros., Inc. v. Glens Falls Indemnity Co.*, 121 Cal.App.2d 206, 263 P.2d 39 (1953), and cases cited therein, Couch has concluded:

*If the owner of a vehicle furnishes it to an insured for the latter's use and for a consideration, but supplies his own driver and retains possession and control over the vehicle at all times, the vehicle is not rented to the insured within an exclusionary provision of the policy."*

13 Couch on Insurance, § 45:991.

Because the first criterion for exclusion under the general liability endorsement does not apply to the facts of this case, Hanover can prevail only if the second criterion is applicable. Yet it is clear from our discussion above that the El Camino was not being *"operated"* by a Sun employee at the time of the accident.

Because neither of the criteria for exclusion applies, coverage is available to Sun under the terms of the general liability endorsement. Accordingly, Hanover is obligated to indemnify Sun for its liability to Maurice James.

Having found coverage under that endorsement, we need not address the question of whether there is coverage under the non-owned automobile endorsement.

The entry shall be:

Appeal of Lewiston Daily Sun sustained.

Case remanded to Superior Court for further proceedings consistent with the opinion herein.

WERNICK, J., did not sit.

---

5. The presiding Justice made this finding when analyzing coverage under the Non-Ownership Automobile Liability Endorsement. He concluded that the El Camino was not covered by that endorsement because, at the time of the accident, the El Camino was a non-owned commercial vehicle regularly used in the business of Sun.