**PEERLESS INSURANCE COMPANY**

v.

**Mary HANNON, et al.**

Supreme Judicial Court of Maine.

Argued Sept. 18, 1990.
Decided Nov. 8, 1990.

James D. Poliquin (orally), Norman, Hanson & Detroy, Portland, for plaintiff.

Steven D. Silin, Paul F. Macri (orally), Berman, Simmons & Goldberg, Lewiston, for Mary Hannon.

Marshall Tinkle (orally), Thompson, McNaboe, Ashley & Bull, Portland, for Universal Underwriters Ins. Co.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

ROBERTS, Justice.

Peerless Insurance Company, as insurer of Earl Lyons, and Universal Underwriters Insurance Company, as insurer of Brooks Chevrolet, Inc., appeal from a summary judgment of the Superior Court (Androscoggin County, *Cole, J.*) declaring that Universal had a primary and Peerless a secondary duty to defend and indemnify Lyons from tort liability that arose from his operation of a car owned by Brooks Chevrolet. Universal argues that Lyons was not an employee of the car dealership and thus not covered under the terms of its policy. Peerless contends that its policy excludes coverage of a non-owned automobile while used by one employed or otherwise engaged in the automobile business of another. Because Lyons was acting as an employee of the dealership at the time liability arose, and because the Peerless policy excluded such coverage, we affirm the judgment against Universal and vacate the judgment against Peerless.

On May 23, 1988, Earl Lyons, a resident of Colebrook, New Hampshire, was involved in a four car automobile accident in Turner, Maine. Allan Hannon, the sole occupant of one of the cars, was killed in the accident. At the time of the accident, Lyons was delivering an automobile purchased by Brooks Chevrolet, also of Colebrook, from another Chevrolet dealership in Winthrop, Maine. Mary Hannon, as personal representative of the estate of Allan Hannon brought suit in Superior Court (Androscoggin County) against both Lyons and Brooks Chevrolet. Peerless then commenced this declaratory judgment action to determine the coverage issues presented by Hannon's suit. Peerless, Universal and Hannon subsequently filed motions for summary judgment.

The summary judgment motions were each based on the uncontradicted deposition testimony of the owner and president of Brooks Chevrolet, Bradford Brooks. Brooks testified at length about the nature of car swapping and Lyons's activities on behalf of Brooks Chevrolet. According to Brooks a car swapper is a person hired to drive a car from one dealership to another in order to allow the dealerships to swap or make an outright purchase of the car. His dealership used swappers on a regular basis and Lyons carried out numerous swaps in the six years preceding the accident. Brooks Chevrolet's swappers were not regular employees, they were not on the payroll, worked only when needed, received no benefits or tax statements and were not invited to employee functions. Compensation was fixed at the completion of each swap by mutual agreement of the parties. By nature, the job required little supervision and Brooks allowed his swappers to choose their own routes and make minor personal stops.

The dealership, however, used swappers on a frequent and regular basis, since

swapping was a common and useful practice in the industry. Brooks testified that occasionally he used his regular employees to swap, but preferred outside swappers because they were less expensive. Significantly, Brooks testified that he had an absolute right to control the activities of his swappers. He did not permit the swappers to substitute drivers, and he had the right to terminate a swapper in mid-swap if he discovered a problem with that swapper's performance. Brooks stated that if there were unexpected difficulties in accomplishing the swap, swappers would be expected to call the dealership to get instructions.

The Universal policy issued to Brooks Chevrolet insured it and its employees with respect to the operation of company-owned cars within the scope of company permission. The Peerless policy issued to Lyons covered liability "arising out of the ownership, maintenance or use" of any automobile, but excluded the use of non-owned automobiles while "employed or otherwise engaged in the automobile business of the insured or of any other person or organization."

■ Universal challenges the court's decision on the ground that Lyons's position as a car swapper did not bring him within the legal definition of employee. Relying on the definition of employee developed by this court since *Murray's Case*, 130 Me. 181, 154 A. 352 (1931), Universal argues that Lyons was an independent contractor and not an employee of Brooks Chevrolet. Brooks's uncontradicted deposition testimony compels the opposite conclusion. We have emphasized that although no factor conclusively establishes the existence of an employment relationship, the *right* of employers to control the activities of those working for them and to begin and terminate the relationship are crucial factors in establishing an employment relationship. *Lewiston Daily Sun v. Hanover Insurance Company*, 407 A.2d 288, 292 (Me. 1979); *Poulette v. Herbert C. Haynes, Inc.* 347 A.2d 596, 599 (Me.1975); *Lunt v. Fidelity & Casualty Co.*, 139 Me. 218, 224, 28 A.2d 736 (1942). The right to control employment is not negated by the fact that the circumstances of employment have never required exertion of that right. In the instant case we are presented with an employment situation which by its nature required little supervision. Brooks's deposition, however, left no doubt that if control over a swapper became necessary, it was within his prerogative to exercise it.

Lyons and his fellow swappers were not engaged in activities that we have traditionally associated with independent contractors. He signed no contract with Brooks, and could be terminated at any time. He had no right to hire employees and his swapping activities required no special skills. *See Murray's Case*, 130 Me. at 186–187. There was also no showing that Lyons engaged in freelance swapping as an independent business. As far as Brooks knew he was the only person who hired Lyons to engage in car swaps. The totality of these circumstances clearly indicates that Lyons's activities were neither ancillary to nor independent of the employer's business in the manner we have historically associated with independent contracting. *See Lewiston Daily Sun*, 407 A.2d at 292; *Murray's Case*, 130 Me. at 186–188.

■ On appeal, Peerless contends that the court erred in holding it had a secondary responsibility to defend Lyons in the underlying suit. Universal and Hannon counter that the Peerless coverage exclusion for use of a non-owned automobile while engaged in the automobile business violates Maine's Financial Responsibility Law, 29 M.R.S.A. §§ 779–790 (1978 & Supp.1990). Contrary to that contention, nothing in the statute prohibits the limitation on coverage for non-owned automobiles. Because the Peerless policy validly denies coverage to those driving a non-owned car while engaged in the automobile business, the court erred in holding it secondarily liable.

■ Peerless also contends that Universal should be liable to it for costs and attorney fees in bringing this declaratory judgment action. We disagree. In the past we have required payment of attorney fees to an *insured* who is wrongfully brought into court on a declaratory judg-

ment action by his insurer. Because this case involves a dispute over coverage between two insurance companies and not an insurance company forcing its insured to bear the litigation expense of a bad faith claim, the policy considerations that underlie the rule are not applicable here. *See Union Mutual Fire Insurance Co. v. Inhabitants of the Town of Topsham,* 441 A.2d 1012, 1019 (Me.1982).

The entry is:

Judgment modified by vacating the declaration of excess coverage by Peerless Insurance Company and, as modified, affirmed.

All concurring.