STATE OF MAINE                          SUPERIOR COURT
YORK, ss.                               CIVIL ACTION
                                        DOCKET NO. ALFSC-CV-17-151

CHERYL AVERILL,                    )
                                   )
          Plaintiff,               )           AMENDED
                                   )   ORDER ON DEFENDANT'S MOTION FOR
v.                                 )     PARTIAL SUMMARY JUDGMENT
                                   )
JOSEPH J. FIANDACA, JR.,           )
                                   )
          Defendant.               )

On May 24, 2019, the Court entered an Order denying Defendant Joseph J. Fiandaca's

Motion for Partial Summary Judgment in his favor on the questions of whether (1) Plaintiff

Cheryl Averill was an independent contractor or an employee, and (2) the amounts allegedly

owed to Averill constitute "wages" within the meaning of 26 M.R.S. § 626. In relation to

Defendant's Motion for Partial Summary Judgment, Averill requested summary judgment stating

that she was Fiandaca's employee and not an independent contractor based on the record of

undisputed material facts.

In denying Finadaca's Motion for Summary Judgment, the Court inadvertently

overlooked the copies of the parties' depositions that were filed as a part of the summary

judgment record in support of their respective statements of material fact. Defendant now moves

the Court to reconsider its Order, arguing the undisputed material facts compel the conclusion

that Averill was an employee. Pursuant to M.R. Civ. P. 60(a), the Court amends its order of May

24, 2019 to state as follows:

## I.    Summary Judgment Factual Record

Cheryl Averill and Joseph Fiandaca reconnected at their thirtieth high school reunion in

York, Maine on July 31, 2010, and began dating around mid-August of that year. (DSMF ¶¶ 1-

1

2; PSAMF ¶ 29.) At the time they started dating, Ms. Averill was living in Saco, Maine and working as a waitress and at Marshwood Middle School in Eliot, Maine, while Mr. Fiandaca was living and working as a self-employed lobster fisherman in Frenchboro, Maine. (DSMF ¶¶ 3-4; PSAMF ¶ 48.)

Shortly after they reconnected, Fiandaca began proposing an arrangement where Averill would live and work with him in Frenchboro. (PSAMF ¶¶ 29-31.) Over the next year or so, Averill visited Fiandaca at his Frenchboro home six times, although the parties dispute whether Averill worked with Fiandaca on his lobster boat during these visits. (PSAMF ¶¶ 31, 52.)

Fiandaca maintained an apartment in York, Maine, where he managed property for his mother. (DSMF ¶ 5.) In the spring of 2011, Averill left her apartment in Saco and moved into Fiandaca's York apartment in the spring of 2011. (DSMF ¶ 6.) While Fiandaca paid the rent and utilities at the York apartment, Averill would perform tasks related to Fiandaca's property management duties without compensation. (PSAMF ¶¶ 43-47, 50.) During this time, Fiandaca made various proposals to Averill that she come live and work with him in Frenchboro. (PSAMF ¶¶ 35-39.) Averill wanted Fiandaca to make financial commitments to her before she would quit her job and move to Frenchboro to live and work with him. (PSAMF ¶ 42.)

After having dated for more than a year (DSMF ¶¶ 2, 13), Fiandaca hired Averill to work as a sternman on his lobster boat. (DSMF ¶ 7; PSAMF ¶ 7.) Averill also performed non-lobstering related work for Fiandaca, including bookkeeping. (DSMF ¶ 7; PSAMF ¶ 7.) Averill lived and worked with Fiandaca in Frechboro, Maine from about October 6, 2011 until about August 21, 2016. (DSMF ¶¶ 13, 22.)

As a part of her compensation, Fiandaca agreed to pay Averill's living expenses and health insurance; the parties dispute whether Fiandaca agreed to pay Averill a percentage of his

2

gross receipts as compensation. (DSMF ¶¶ 8-9; PSAMF ¶ 9.) Besides covering her living expenses, Fiandaca did not compensate Averill at regular intervals, and the parties dispute whether Fiandaca agreed to pay Averill at regular intervals. (DSMF ¶ 14; PSAMF ¶ 14.) Fiandaca paid Averill a total of $75,000 by checks dated December 31, 2013; September 7, 2015; December 28, 2015; and August 11, 2016. (DSMF ¶ 16.) During an argument on October 30, 2013, Fiandaca wrote Averill a check for $60,000, but Averill did not cash it because she believed that would mark the end of her relationship with Fiandaca. (PSAMF ¶ 61.) Averill's income was always reported on a 1099 tax form, rather than a W-2, which was Fiandaca's standard business practice. (DSMF ¶ 27; PSAMF ¶ 27.)

Averill often complained about not being paid, and during an argument Fiandaca told her "you'll get your check when you leave." (PSMF ¶¶ 63-64.) On September 2, 2016, Averill withdrew a check for $6,000 from the parties' joint checking account, the balance of which was comprised entirely of the receipts from Fiandaca's lobstering business apart from a $1,000 deposit made by Averill in 2014. (DSMF ¶¶ 15, 23.)

Averill's work involved performing a number of tasks on the lobster boat, in Fiandaca's shop, and elsewhere. (DSMF ¶¶ 17-18; PSAMF ¶¶ 20, 34.) Averill also managed various aspects of Fiandaca's personal and financial responsibilities, both before and after she moved to Frenchboro. (PSAMF ¶ 54.) Averill did not keep time records for the dates and times she worked on the lobster boat, in the shop, or performing other tasks. (DSMF ¶ 20.) Averill did not have set hours or days to work. (DSMF ¶ 20.) Averill claims she worked all day, every day performing tasks for Fiandaca's benefit. (PSAMF ¶ 20.) There were days when, for various reasons, Averill would not go out on the lobster boat with Fiandaca. (DSMF ¶ 21; PSAMF ¶ 21.)

3

Fiandaca controlled the hiring of assistants to work on the lobster boat, and he provided all of the necessary tools, gear, and materials for Averill to perform the work on the lobster boat. (DSMF ¶¶ 25-26.)

Prior to moving to Frenchboro, Averill had no employment experience doing the sort of tasks she performed on the lobster boat and in the shop. (PSAMF ¶ 55.) Fiandaca instructed Averill how to perform various tasks, which she performed at his direction. (PSAMF ¶ 56.) Averill did have prior experience doing clerical and secretarial work. (PSAMF ¶ 55.)

The parties dispute whether Averill was free to work other jobs during the course of her employment with Fiandaca. (DSMF ¶ 27; PSAMF ¶ 27.)

## II. Discussion
### A. Summary Judgment Standard

Summary judgment is proper where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653; M.R. Civ. P. 56(c). A material fact is "one that can affect the outcome of the case." *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue is raised when sufficient evidence requires a fact-finder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504). When material facts are in dispute, the dispute must be resolved through fact-finding at trial. *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. A party seeking to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220; *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48. "Summary judgment, when appropriate, may be entered against the moving party." M.R. Civ. P. 56(c).

4

## B. Claims for Unpaid Wages, 26 M.R.S. § 626

When Averill ceased living and working with Fiandaca in August of 2016, Maine law provided that "[a]n employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid . . . ." 26 M.R.S. § 626 (2016).

Fiandaca argues that (1) Averill was an independent contractor and not entitled to recover as an employee under the statute, and (2) the money owed to Averill does not constitute "wages." Averill responds that the undisputed factual record compels the legal conclusion that she was Fiandaca's employee, and that the money owed to her constitute "wages" under section 626.

### 1. Independent Contractor/Employee Distinction

"For purposes of this section, the term 'employee' means any person who performs services for another in return for compensation, but does not include an independent contractor." 26 M.R.S § 626.

At common-law, the determination of whether a person is an employee or an independent contractor is based on weighing a number of factors:

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

*Murray's Case*, 154 A. 352, 354, 130 Me. 181, 186 (1931); *see also Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 17, 145 A.3d 1030 (same). "Control is the most important factor, and the right to control the details of the performance, present in the context of an employment relationship, must be distinguished from the right to control the result to be

5

obtained, usually found in independent contractor relationships." *Day's Auto Body, Inc.*, 2016 ME 121, ¶ 17, 145 A.3d 1030 (internal quotation marks and citation omitted)

Contrary to Defendant's argument, several of the factors weigh in favor of Averill being deemed an employee rather than an independent contractor. Averill's work for Fiandaca was not particularly distinct from Fiandaca's work; Averill did not employ her own assistants; Fiandaca, not Averill, provided all of the necessary tools, supplies, and materials; Averill worked for Fiandaca for over five years under a contract that was indefinite in duration; Averill was not paid by the job; Fiandaca instructed Averill how to perform various tasks and directed her to perform various tasks; and Averill's work on the lobster boat and in the shop was a part of Fiandaca's regular business.[1]

On the other hand, Averill's work involved tasks that were not a part of Fiandaca's regular business, such as managing Finadaca's personal and household finances, and managing his real estate holdings. The parties dispute whether Fiandaca precluded Averill from seeking outside employment, and the extent to which Fiandaca controlled Averill's schedule. Averill was not paid by the hour or at regular intervals.

Contrary to the parties' arguments, the undisputed facts of this case do not compel the conclusion that Averill was an "employee" or an "independent contractor." The parties were engaged in a lengthy, tumultuous, and complicated business and personal relationship that does not fit neatly into the legal definitions of employee and independent contractor. That

---

[1] The fact that Averill's income was reported on a 1099, rather than a W2, is irrelevant in this analysis. *See Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1298 (Me. 1982) ("withholding practices may simply reflect an attempt to avoid responsibility for providing workers' compensation coverage."); *see also West v. C.A.M. Logging*, 670 A.2d 934, 939 (Me. 1996) (same); *Stone v. Thorbjornson*, 656 A.2d 1211, 1214 (Me. 1995) (same).

determination is best left to the finder of fact, and neither party is entitled to summary judgment on the question of whether Averill was an employee or an independent contractor.

### 2. "Wages"

Fiandaca next argues that Averill's claim does not constitute a claim for unpaid "wages," within the meaning of section 626 because she was not paid at regular, periodic intervals.

The statute permits recovery for "the amount of unpaid wages[,]" as well as treble damages, attorney's fees, and interest. 26 M.R.S. § 6262 (2016). While the Law Court has never defined the term "wages" within the context of section 626, it has acknowledged that the legislature intended a broad definition. *See Dinan v. Alpha Networks, Inc.*, 2013 ME 22, ¶ 18, 60 A.3d 792 (noting the statute applies to "any person who performs services for another in return for compensation" besides an independent contractor); *see also Community Telecommunications Corp. v. Loughran*, 651 A.2d 373, 376 (Me. 1994) (holding that section 626 was intended to provide a "broad guarantee of prompt payment of wages" and that commissions and bonuses constitute "wages" under the statute).

Thus, the Law Court has made clear that section 626 should be interpreted in light of the broad protections the legislature intended to provide. With this in mind, there is no principled reason to conclude that Averill's compensation did not constitute a "wage" because she was not paid regularly. As such, Fiandaca is not entitled to summary judgment on this basis.

## II.   Conclusion & Order

In light of the foregoing, the entry shall be:

"Defendant Joseph Fiandaca, Jr.'s Motion for Partial Summary Judgment is DENIED. Plaintiff Cheryl Averill's request for summary judgment is DENIED. Plaintiff Cheryl Averill's Motion to Reconsider is DENIED."

7

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

SO ORDERED.

Dated: June 5, 2019

_____
John O'Neil, Jr.
Justice, Superior Court

Entered on the Docket on: 6/6
Copies sent to the following parties/counsel on: 6/6

Atty Bedard
Atty Mccullough

8

STATE OF MAINE                          SUPERIOR COURT
YORK, ss.                               CIVIL ACTION
                                        DOCKET NO. ALFSC-CV-17-151

CHERYL AVERILL,                 )
                                )
        Plaintiff,              )
                                )       ORDER ON DEFENDANT'S MOTION FOR
v.                              )          PARTIAL SUMMARY JUDGMENT
                                )
JOSEPH J. FIANDACA, JR.,        )
                                )
        Defendant.              )

Plaintiff Cheryl Averill brings this action against Defendant, Joseph Fiandaca, Jr.,

relating to her personal and employment relationship with Defendant. Defendant now moves,

pursuant to M.R. Civ. P. 56(b), for partial summary judgment on Count III of Plaintiff's seven-

count complaint, which seeks damages for unpaid wages pursuant to 26 M.R.S. § 626.[1]

I.     **Summary Judgment Factual Record**[2]

Cheryl Averill and Joseph Fiandaca reconnected at their thirtieth high school reunion in

York, Maine on July 31, 2010, and began dating around mid-August of that year. (DSMF ¶¶ 1-

2; PSAMF ¶ 29.) At the time they started dating, Ms. Averill was living in Saco, Maine and

working as a waitress and at Marshwood Middle School in Eliot, Maine, while Mr. Fiandaca was

living and working as a self-employed lobster fisherman in Frenchboro, Maine. (DSMF ¶¶ 3-4;

PSAMF ¶ 48.)

---

[1] While Defendant's written motion also seeks summary judgment in his favor on Count II of the Plaintiff's Complaint (breach of an oral contract of employment), Defendant waived that argument at oral argument on the present motion, which was held on May 9, 2019.

[2] Both parties support their statements of material fact, and qualifications and/or denials thereof, by referencing depositions that neither party has included in the summary judgment record. In its discretion, the Court will consider the admitted facts as such. However, to the extent a denied or qualified statement of fact, qualification, or denial is not properly supported by record materials, that unsupported statement of fact, qualification, or denial will be disregarded. *See* M.R. Civ. P. 56(h)(4).

1

Shortly after they reconnected, Fiandaca began proposing an arrangement where Averill would live and work with him in Frenchboro. (PSAMF ¶¶ 29-31.) Over the next year or so, Averill visited Fiandaca at his Frenchboro home six times, although the parties dispute whether Averill worked with Fiandaca on his lobster boat during these visits. (PSAMF ¶¶ 31, 52.)

Fiandaca maintained an apartment in York, Maine, where he managed property for his mother. (DSMF ¶ 5.) In the spring of 2011, Averill left her apartment in Saco and moved into Fiandaca's York apartment in the spring of 2011. (DSMF ¶ 6.) While Fiandaca paid the rent and utilities at the York apartment, Averill would perform tasks related to Fiandaca's property management duties without compensation. (PSAMF ¶¶ 43-47, 50.) During this time, Fiandaca made various proposals to Averill that she come live and work with him in Frenchboro. (PSAMF ¶¶ 35-39.) Averill wanted Fiandaca to make financial commitments to her before she would quit her job and move to Frenchboro to live and work with him. (PSAMF ¶ 42.)

Averill claims that, in early 2011, Fiandaca hired Averill as a sternman on his lobster boat, and pursuant to this arrangement she would live in Fiandaca's Frenchboro home rent free, Fiandaca would cover household expenses, pay for Averill's health insurance, and pay her 20% of his gross lobster sales at the end of every year. (DSMF ¶¶ 7-8.) Fiandaca claims he never promised to pay Averill 20% of the gross lobster sales, but admits that he promised to pay her "by the end of the year." (DSMF ¶ 9; PSAMF ¶ 58.)

Around October 7, 2011, Averill moved to Frenchboro and began working on Fiandaca's lobster boat. (DSMF ¶ 13.) While Averill lived and worked with Fiandaca in Frenchboro, Fiandaca paid her at irregular intervals by checks in the amount of $25,000 (dated 12/31/13); $10,000 (dated 9/7/15); $30,000 (dated 12/28/15); and $10,000 (dated 8/11/16). (DSMF ¶¶ 14, 16.) Fiandaca did not pay Averill at the end of 2011, 2012, or 2014, and Averill did not insist on

2

payment. (PSAMF ¶¶ 59-60, 62.) However, Averill would frequently complain about not being paid. (PSAMF ¶ 63.) During an argument on October 30, 2013, Fiandaca wrote Averill a check for $60,000, but Averill did not cash it because she believed that would mark the end of her relationship with Fiandaca. (PSAMF ¶ 61.) During another fight towards the end of the parties' relationship, Fiandaca told Averill she would get paid "when you leave." (PSAMF ¶ 64.)

Averill performed various tasks on the lobster boat and in the shop, she worked irregular hours and did not keep track of her time, and did not always go out with Fiandaca on the lobster boat (although the parties dispute the circumstances under which Averill would stay behind). (DSMF ¶¶ 17-21; PSMF ¶ 21.) In the course of their work together, Fiandaca was the only one to hire assistants and provided all of the tools, gear, and materials necessary for the work. (DSMF ¶¶ 25-26.) The parties dispute whether, in the course of Averill's employment, she was precluded from taking other jobs. (DSMF ¶ 27; PSMF ¶ 27.) Averill had no prior experience working on a lobster boat. (PSAMF ¶ 55.) Fiandaca provided Averill, and everyone else who worked with him on his lobster boat, with a 1099 tax form (rather than a W-2) to document their income. (DSMF ¶ 28.)

Averill ceased living and working with Fiandaca in August of 2016. (DSMF ¶ 22.) By check dated September 2, 2016, Averill withdrew $6,000 from the parties' joint checking account whose balance, aside from a single $1,000 deposit Averill claims to have made in the summer of 2014, consisted entirely of the proceeds from the lobster business. (DSMF ¶ 15.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Stanley v. Hancock County Comm'rs,*

3

2004 ME 157, ¶ 13, 864 A.2d 169; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653;

M.R. Civ. P. 56(c). A material fact is "one that can affect the outcome of the case." *Dyer v.*

*DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue is raised when sufficient evidence

requires a fact-finder to "choose between competing versions of the truth." *Id.* (quoting

*Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d

504). When material facts are in dispute, the dispute must be resolved through fact-finding at

trial. *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. A party seeking to avoid summary

judgment must present a prima facie case for the claim or defense that is asserted. *See Reliance*

*Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220; *Doyle v. Dep't of Human*

*Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48.

### B. Claims for Unpaid Wages, 26 M.R.S. § 626

When Averill ceased living and working with Fiandaca in August of 2016, Maine law

provided that "[a]n employee leaving employment must be paid in full within a reasonable time

after demand at the office of the employer where payrolls are kept and wages are paid . . . ." 26

M.R.S. § 626 (2016).

Fiandaca argues that (1) Averill was an independent contractor and not entitled to recover

as an employee under the statute, and (2) the money owed to Averill does not constitute "wages."

Averill responds that the undisputed factual record compels the legal conclusion that she was

Fiandaca's employee, and that the money owed to her constitute "wages" under section 626.

### 1. Independent Contractor/Employee Distinction

"For purposes of this section, the term 'employee' means any person who performs

services for another in return for compensation, but does not include an independent contractor."

26 M.R.S § 626.

4

At common-law, the determination of whether a person is an employee or an independent contractor is based on weighing a number of factors:

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

*Murray's Case*, 154 A. 352, 354, 130 Me. 181, 186 (1931); *see also Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 17, 145 A.3d 1030 (same). "Control is the most important factor, and the right to control the details of the performance, present in the context of an employment relationship, must be distinguished from the right to control the result to be obtained, usually found in independent contractor relationships." *Day's Auto Body, Inc.*, 2016 ME 121, ¶ 17, 145 A.3d 1030 (internal quotation marks and citation omitted)

Contrary to Defendant's argument, several of the factors weigh in favor of Averill being deemed an employee rather than an independent contractor. Averill's work for Fiandaca was not particularly distinct from Fiandaca's work; Averill did not employ her own assistants; Fiandaca, not Averill, provided all of the necessary tools, supplies, and materials; Averill worked for Fiandaca for over five years under a contract that was indefinite in duration; and Averill's work was a part of Fiandaca's regular business.[3]

As to the "most important factor"—Fiandaca's ability to control the manner in which Averill performed her work—there are no undisputed facts upon which the Court can conclude

---

[3] The fact that Averill's income was reported on a 1099, rather than a W2, is irrelevant in this analysis. *See Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1298 (Me. 1982) ("withholding practices may simply reflect an attempt to avoid responsibility for providing workers' compensation coverage."); *see also West v. C.A.M. Logging*, 670 A.2d 934, 939 (Me. 1996) (same); *Stone v. Thorbjornson*, 656 A.2d 1211, 1214 (Me. 1995) (same).

this factor favors either party. Moreover, both parties paint starkly different pictures of the facts. In Defendant's version, Averill could perform a significant portion of her work at her own pace and without significant oversight. In Plaintiff's version, her schedule was the product of Fiandaca's whims on the particular day. Another unresolved factor is the method by which Averill's compensation was calculated.

Given the disputed nature of the facts, summary judgment is not warranted. The determination of whether Averill was an employee or an independent contractor is best left to the finder of fact.

### 2. "Wages"

Fiandaca next argues that Averill's claim does not constitute a claim for unpaid "wages," within the meaning of section 626 because she was not paid at regular, periodic intervals.

The statute permits recovery for "the amount of unpaid wages[,]" as well as treble damages, attorney's fees, and interest. 26 M.R.S. § 6262 (2016). While the Law Court has never defined the term "wages" within the context of section 626, it has acknowledged that the legislature intended a broad definition. *See Dinan v. Alpha Networks, Inc.*, 2013 ME 22, ¶ 18, 60 A.3d 792 (noting the statute applies to "any person who performs services for another in return for compensation" besides an independent contractor); *see also Community Telecommunications Corp. v. Loughran*, 651 A.2d 373, 376 (Me. 1994) (holding that section 626 was intended to provide a "broad guarantee of prompt payment of wages" and that commissions and bonuses constitute "wages" under the statute).

Thus, the Law Court has made clear that section 626 should be interpreted in light of the broad protections the legislature intended to provide. With this in mind, there is no principled

6

reason to conclude that Averill's compensation did not constitute a "wage" because she was not paid regularly. As such, Fiandaca is not entitled to summary judgment on this basis.

## III.  Conclusion & Order

In light of the foregoing, the entry shall be:

"Defendant Joseph Fiandaca, Jr.'s Motion for Partial Summary Judgment is DENIED."

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

SO ORDERED.

Dated: May 24, 2019

John O'Neil, Jr.
Justice, Superior Court

Entered on the Docket on: 5/24
Copies sent to the following parties/counsel on: 5/24

Atty McCullough
Atty Bedard

7