**IDAHO AMBUCARE CENTER, INC., Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 93–36139.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1994.

Decided June 9, 1995.

O'SCANNLAIN, Circuit Judge:

We must decide whether physicians who were officers of a corporation operating a clinic are also employees of the corporation for federal income tax purposes.

I

Idaho Ambucare Center ("Ambucare"), an Idaho corporation, provides an out-patient surgery facility and support staff for physicians in the Nampa, Idaho area. Incorporated in 1982, Ambucare was initially owned by nine physicians, each of whom was a shareholder and a member of Ambucare's Board of Directors. Dr. William Crepps was one of these original shareholders. Dr. Crepps also served as Ambucare's secretary and treasurer from the opening of the business in February 1983 until his resignation from Ambucare in February 1985.

Dr. Crepps, through his professional corporation, Dr. William F. Crepps, M.D., P.A. ("Crepps, P.A."), entered into a contract with Ambucare, whereby Crepps, P.A. would provide managerial services; in exchange, Ambucare would pay Crepps, P.A. $2500 per month. The management agreement expressly stated that Dr. Crepps was an independent contractor, and not an employee; as such, the agreement did not entitle Crepps to any employee benefits from Ambucare. The agreement was effective for a three-year term and could be terminated by either party only upon ninety days notice.

As administrator, Dr. Crepps managed the Ambucare facility, oversaw its finances, hired its employees, and supervised the scheduling of surgeries. Crepps, P.A. was not paid periodically for Dr. Crepps' managerial services, however; instead, when Dr. Crepps resigned from Ambucare in February 1985, Crepps, P.A. received a $59,000 lump sum payment. Ambucare did not withhold from this amount any payment for Federal Insurance Contributions Act ("FICA") taxes or Federal Unemployment Tax Act ("FUTA") taxes.

For a short period following Dr. Crepps' resignation, Ambucare was without an administrator. In early 1986, however, Dr. Gregory Schaefer, Ambucare's President, be-

Bridget M. Rowan, U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

William A. Morrow, White, Peterson, Pruss, Morrow & Gigray, Nampa, ID, for plaintiff-appellee.

Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges.

gan performing the duties of administrative manager. Like Dr. Crepps, Dr. Schaefer made day-to-day business decisions, oversaw Ambucare's finances, managed the building and its grounds, and hired and fired employees. Dr. Schaefer also represented Ambucare in its dealings with insurers, accountants, and attorneys, and he reported to the Board of Directors on a regular basis, all the while actively practicing medicine, which was the source of the majority of his income and the source of his employee benefits. Dr. Schaefer resigned from his position as administrator in late 1988.

Dr. Schaefer did not have a written contract with Ambucare. He performed all administrative services gratuitously until September 1986, when Ambucare's Board voted to compensate him for his services in the amount of $500 per month. Again, Ambucare did not treat any of the compensation paid to Dr. Schaefer as subject to FICA and FUTA taxes.

In 1989, the Internal Revenue Service ("IRS") conducted an audit of Ambucare. The IRS determined that both Dr. Crepps and Dr. Schaefer were employees of Ambucare and, on this ground, assessed against Ambucare the related FICA and FUTA tax deficiencies, penalties, and interest for the tax years involved. Ambucare paid these taxes and sued for a refund, contending that Dr. Crepps and Dr. Schaefer were independent contractors whose compensation was exempt from employment taxes.

The district court agreed with Ambucare and ordered the IRS to refund the taxes paid. The government appeals from such judgment.

## II

Sections 3111 and 3301 of the Internal Revenue Code impose FICA (social security) and FUTA (unemployment) taxes on employers for wages paid to their employees.[1] For

1. Both FICA and FUTA define "wages" as "all remuneration for employment." 26 U.S.C. §§ 3121(a) & 3306(b).

2. Although the management agreement referred to Dr. Crepps as an "independent contractor," such reference is not controlling. *See Frank*

FICA and FUTA tax purposes, section 3121(d) of the Internal Revenue Code defines an employee as

(1) any officer of a corporation; or

(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee

. . . .

The application of the above provisions leads us to reach different conclusions with regard to each officer involved.

### A

■ We first address the status of Dr. Crepps. Before applying the statutory framework articulated above, we must consider the significance of the fact that Ambucare contracted with Crepps, P.A. and not with Dr. Crepps individually, for the services of Dr. Crepps.[2] Traditionally, when a taxpayer's employment contract is with an individual's professional corporation rather than with the individual himself, courts have treated the individual as an employee of the professional corporation, rather than as an employee of the taxpayer. To merit such treatment, a two-part test must be satisfied, however:

First, the professional services association must have the right to direct or control in some meaningful sense the activities of the service provider. Second, there must exist between the professional service corporation and the entity using the services a contract or similar indicium which recognizes the professional services association's controlling position.

*Dutch Square Medical Center Ltd. v. United States,* No. 393–2630–17, 1994 WL 605850, at *3 (S.D.S.C. Sept. 6, 1994); *see also Sargent v. Commissioner,* 929 F.2d 1252, 1258 (8th Cir.1991); *Haag v. Commissioner,* 88 T.C. 604, 612, 1987 WL 49288 (1987), *aff'd,* 855 F.2d 855 (8th Cir.1988). We are persuaded

*Lyon Co. v. United States,* 435 U.S. 561, 573, 98 S.Ct. 1291, 1298, 55 L.Ed.2d 550 (1978) ("In the field of taxation ... the courts are concerned with substance and realities, and formal written documents are not rigidly binding.") (quotation omitted).

that Crepps, P.A. satisfies both requirements.

There is no documentary evidence in the record demonstrating that Dr. Crepps is an employee of Crepps, P.A. or that Crepps, P.A. has the right to control the activities of Dr. Crepps. However, the lack of a written contract between the individual and his professional corporation is not fatal to the assertion that the professional corporation had the right to control that individual. *See Pflug v. Commissioner,* 58 T.C.M. 685, 1989 WL 135779 (1989) (lack of contract insignificant where business records and witness testimony supported the assertion that the professional corporation controlled the activities of the employee). In the instant case, Dr. Crepps testified that he was employed full-time by Crepps, P.A. from its inception in 1970, and was never employed outside of the P.A. The IRS offers no contrary evidence except its legal argument. Accordingly, it can be said that Crepps, P.A. controlled the services of Dr. Crepps.

In satisfaction of the second requirement, we need look no further than the express language of the management agreement between Crepps, P.A. and Ambucare for Dr. Crepps' services. This is a clear indicium of the controlling position of Crepps, P.A.[3]

Accordingly, we conclude that Dr. Crepps is an employee of his professional association and not of Ambucare. For this reason, the district court correctly held that Ambucare need not have treated payments made to Crepps, P.A. as wages, subject to FICA and FUTA.

**B**

In contrast, Dr. Schaefer provided services to Ambucare in his individual capacity. We must thus examine the applicability of section 3121 and regulations thereunder.

As noted, for the purposes of FICA and FUTA, an officer of a corporation is deemed an employee. *See* 26 U.S.C. § 3121(d)(1). There is an exception to the per se rule that corporate officers are employees, however: under Treasury Regulation § 31.3121(d)–1(b),

> an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation.

*See also* Treas.Reg. § 31.3306(i)–1(e). Thus, officers will be considered corporate employees only if they perform more than minor services for the corporation; an officer who, as such, performs only minor services for the corporation is not an employee unless, under common law rules, he or she has the status of an employee. *See Spicer Accounting, Inc. v. United States,* 918 F.2d 90, 93 (9th Cir.1990).

Applying these provisions, the district court concluded that Dr. Schaefer was not an Ambucare employee.[4] In reaching its conclusion, the court distinguished Dr. Schaefer's role as an officer from his role as administrator. Although the opinion does not make clear the grounds of this distinction, the court appears to have focused upon the words "as such" in Treasury Regulation § 31.3121(d)–1(b). The court apparently in-

---

**3.** In rebuttal, the IRS challenges the validity of this agreement. Under the Articles of Incorporation, Crepps, P.A. was formed

> [t]o render professional services through its authorized officers, employees and agents as licensed physicians and surgeons practicing the specialty of anesthesiology under the laws of the State of Idaho and ... [to] perform all other acts necessary and incidental thereto.

Idaho law makes it illegal for an Idaho corporation to "engage in any business other than the rendering of the professional services for which it was specifically incorporated." Idaho Code § 30–1307. The IRS contends that because the management agreement provided for administrative services, and not anesthesiology services, the

agreement violates Idaho law; absent a valid agreement between Ambucare and Crepps, P.A., Crepps, P.A. cannot be viewed as the employer of Crepps.

We are not persuaded. Crepps, P.A.'s corporate purpose is both the practice of anesthesiology and the performance of those acts incidental thereto. Dr. Crepps provided significant anesthesiology services to Ambucare; the administrative services he rendered thereto were both necessary and incidental to his services as an anesthesiologist.

**4.** The district court applied this same analysis to Dr. Crepps. Because we have previously considered the status of Dr. Crepps, however, we limit our discussion here to Dr. Schaefer.

terpreted these words to indicate that a corporate officer is a statutory employee only when that officer "as such" performs substantial services; if, however, the officer performs such services in a capacity other than his official capacity, then that individual's status as a corporate officer does not render him a statutory employee. Reasoning that Dr. Schaefer performed his administrative functions as an administrator, and not as an Ambucare officer, the court concluded that he was not a statutory employee of Ambucare.

The IRS challenges the district court's rationale, rejecting the court's "dual capacity" analysis. Instead, the IRS contends, the court should have assessed only the substance of the services provided by Dr. Schaefer, without considering the role in which such services were provided. To support its analysis, the IRS points to this court's holding in *Spicer Accounting*. In *Spicer*, Mr. Spicer, a licensed accountant, was the president of the taxpaying corporation, all of the stock of which he owned with his wife. Mr. Spicer provided substantial accounting services for clients of the corporation; the corporation, however, did not treat him as an employee for FICA and FUTA purposes. This court concluded that Mr. Spicer was indeed a corporate employee. In doing so, the IRS argues, we did not distinguish between Mr. Spicer's duties as a corporate officer and his functions as corporate accountant. Rather, the IRS suggests, we held simply that "because Mr. Spicer performed substantial services that were essential to Taxpayer, Mr. Spicer should be deemed an employee, and payments to him should be deemed "wages" subject to FICA and FUTA." *Spicer*, 918 F.2d at 93.

We are not convinced that *Spicer* forecloses the application of a dual capacity analysis. Having concluded that Mr. Spicer performed substantial services, the *Spicer* court went on to analyze Mr. Spicer's status under the common law rules, implicitly suggesting that if Mr. Spicer were an independent contractor under such rules, he would not be considered a corporate employee, despite his role as a corporate officer performing sub-

stantial services. Such approach is entirely consistent with the dual capacity analysis which Ambucare seeks to have us apply.

We also note that the IRS, in a series of revenue rulings, has previously adopted the analysis which it today asks us to reject. *See, e.g.*, Rev.Rul. 82–83, 1982–1 C.B. 151 ("It is a question of fact in all cases whether officers of a corporation are performing services within the scope of their duties as officers...."); Rev.Rul. 58–505, 1958–2 C.B. 728 (corporate officers who also sold insurance policies under company's standard agents' contracts were not employees of corporation because "the services in the two capacities are separate and distinct"). While Revenue Rulings do not control our decision, they nonetheless provide guidance as they "represent the considered opinion of the agency enforcing the tax laws." *Esser, P.C. v. United States*, 750 F.Supp. 421, 423 (D.Ariz.1990) (quotation omitted).

■ Ultimately, however, we need not rule definitively on this issue, for our conclusion would be the same under either the dual capacity analysis advanced by Ambucare, or the strict "substantial services" test now proposed by the IRS. Under either approach, we are convinced that Dr. Schaefer was an employee of Ambucare.

Revenue Ruling 82–83 is instructive in this regard. In that ruling, a corporation whose stock was owned by its two officers operated a theater. The officers directed all operations of the theater, decided on productions to be performed, set admission prices, and hired performers. Applying a dual capacity analysis, the IRS concluded that the officers were performing services within the scope of their duties as officers and thus were employees of the corporation. In reaching its conclusion, the IRS reasoned that "fundamental decisions regarding the operation of the corporation ... are customarily made by corporate officers or other employees." Rev. Rul. 82–83, at 105.

Similarly, in the case before us, we discern little distinction between the official and administrative duties of Dr. Schaefer.[5] Even

---

5. Accordingly, this case differs from, for exam-

ple, that of an attorney in private law practice

when performing what Ambucare would define as his "administrative" duties, Dr. Schaefer directed the operation of Ambucare, making fundamental decisions generally made by corporate officers. Although the district court concluded that the duties of Ambucare officers were well-defined and excluded administrative functions, we find no evidence in the record to support this conclusion. Nor are we persuaded by Ambucare's contention that the performance of administrative duties shifted from the office of secretary, under Dr. Crepps, to the office of president, under Dr. Schaefer, thus indicating that the jobs were not linked to an officer's role. What Ambucare fails to recognize is that these duties were at all times performed by a corporate officer, suggesting that while the administrative responsibilities were not affiliated with a particular office, they were nonetheless at all times "official" duties.

Because we see no distinction between the official and administrative duties performed by Dr. Schaefer, the dual capacity framework ultimately makes no difference in our analysis—the only significant question before us is whether Dr. Schaefer performed "only minor services." Treas.Reg. § 31.3121(d)–1(b).

A review of the record quickly belies such approach. Although Dr. Schaefer worked only four to five hours per week for Ambucare, he performed substantial services, including financial planning and policymaking, managing the facility, maintaining records, determining employee raises, and the like. Without a doubt, Dr. Schaefer performed more than minor services; thus, he must be deemed an Ambucare employee and payments to him must be treated as wages subject to FICA and FUTA.

AFFIRMED in part and REVERSED in part. Each party shall bear its own costs.

who serves as a secretary of a corporation and also performs legal services therefor. In such a case, a distinction can be drawn between the attorney's "official" functions—which may be nominal, thus rendering the attorney outside the parameters of § 3121(d)(1)—and his duties as corporate outside counsel.