1997 ME 106

**NORTH EAST INSURANCE CO.**

v.

**Roger SOUCY, Jr., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 7, 1997.

Decided May 20, 1997.

Marshall J. Tinkle, David M. Hirshon, Tompkins, Clough, Hirshon & Langer, P.A., Portland, for plaintiff.

John A. McArdle, III, Poulos & Campbell, P.A., Portland, for Roger & Melinda Soucy.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Defendants Roger Soucy, Jr. and Melinda Soucy appeal from the summary judgment entered against them in the Superior Court (Androscoggin County, *Alexander, J.*). They argue that the court erred in ruling as a matter of law that Roger Soucy, Jr. was an "employee" within the meaning of the commercial general liability policy issued by plaintiff, North East Insurance Co. (North East), to Welch Beams, Inc. We affirm the judgment.

[¶ 2] The facts, as developed for the purposes of summary judgment, are as follows: In 1994, Welch Beams, Inc. entered into a contract with Steve Hammond to replace the roof on his store. Several days before work was to begin on the Hammond store, Thomas Welch, the president of Welch Beams, Inc.,[1] engaged Roger Soucy, Jr. to help complete the project.[2] At the time, Soucy worked for his father, Roger Soucy, Sr., when work was available. Soucy's father paid him by the hour and no taxes were withheld from his

---

1. Thomas Welch is also the treasurer, sole shareholder, and only director of Welch Beams, a Maine corporation with its principal place of business in Fayette. The corporation's license was suspended at the time of the accident for non-payment of the required registration fee. Thomas Welch and Welch Beams, Inc. will hereinafter be referred to collectively as "Welch."

2. The exact manner in which Welch employed Soucy is in dispute. Welch testified that Soucy's father asked him to hire his crew as a favor, to keep them busy until Soucy, Sr. had work for them. Soucy, Sr. does not remember asking Welch to employ his son.

pay. Soucy, Sr. considered his son an independent contractor.[3] Soucy was accompanied to the Hammond site by his brother Shawn and another worker, Shane Judd, because Welch asked him to bring along others who needed work.

[¶ 3] Welch testified in his deposition that he considered Soucy to be a subcontractor rather than his employee. He further testified that he considered Soucy to be his father's employee and thought that Soucy, Sr. would have workers' compensation insurance covering Soucy. Soucy had worked for Welch in 1989 as an employee, according to Welch, during a time that Soucy was not working for his father. That year he withheld taxes from Soucy's check. After 1989, Welch stopped treating those working for him as "employees" and started hiring them as "subcontractors." He did this "[b]ecause of the cost of insurances and the cost of hiring people, the paperwork, the red tape, it was much easier to hire subcontractors to do the work."

[¶ 4] On the first day that Soucy, his brother, and Judd began work on the site, they arrived at work two hours before Welch and his crew. At that time, one side of the four-sided roof had already been reshingled and two other parts of the roof had been stripped. Soucy and his "crew" began pulling shingles off the remaining side of the roof, without any instruction from Welch to do so. According to Welch, Soucy did not need to be told what to do because he was "an experienced roofer, he knew what the job had in store, he knew what he had to do, anybody in that position don't need to be told what to do." When Welch arrived, Soucy told him where he and his crew were going to work that day and Welch concurred, sending his crew to another part of the worksite.

[¶ 5] During their days on the project, Soucy and his crew worked exclusively on the roof. They did not run errands for Welch. Welch, however, understood that he had the right to tell Soucy and his crew which roof to work on and, according to Soucy, Welch, not Soucy, told Shawn Soucy and Shane Judd what to do. When Welch was gone from the site, Soucy was in charge. This was because "he was the next in line with the most experience. So it was assumed that he would be in charge when I wasn't around."

[¶ 6] Soucy brought various tools to the Hammond site with which to work. He used his own personal tools, i.e. his tape measure, hammer, utility knife, square, tool apron, and brought two shovels designed for stripping shingles borrowed from his father. Soucy drove to the site in a vehicle owned by his father's business. Soucy and his crew used staging and ladders provided by Welch, as well as Welch's air guns.

[¶ 7] On October 28, 1994, Soucy fell off a ladder at the Hammond site, seriously injuring himself. Neither Welch, Soucy, nor Roger Soucy, Sr. had workers' compensation policies covering his injuries. Welch did have coverage, however, for general commercial liability. Soucy filed a complaint in the Superior Court alleging negligence by Welch. North East then commenced the present action in the Superior Court, seeking a judgment declaring that it is not obliged to defend or indemnify Welch in the negligence action because bodily injury to an employee is excluded from coverage. After cross motions for summary judgment, the court granted a summary judgment in favor of North East. Soucy now appeals.

[¶ 8] We review the entry of a summary judgment for errors of law, viewing the evidence in a light most favorable to the party against whom the judgment was entered. *Maynard v. Commissioner of Corrections*, 681 A.2d 19, 23 (Me.1996). For a party to be entitled to a summary judgment, it must be determined that there are no genuine issues of material fact in dispute and that the prevailing party is entitled to a judgment as a matter of law. *Id.;* M.R.Civ.P. 56(c). Even if the parties differ as to the legal conclusions to be drawn from the historical facts before the court, if there is no serious dispute as to what those facts are, consideration of a summary judgment is proper. *Tondreau v. Sherwin–Williams Co.*, 638 A.2d 728, 730 (Me.1994).

---

**3.** Soucy, Sr. paid all his workers as independent contractors to obtain various perceived advantages unless he was performing a government contract that forbid subcontracting.

[¶ 9] North East's policy covers Welch for liability incurred due to "bodily injury" caused by an "occurrence" taking place in the "coverage territory." Excluded from coverage is liability for "bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business....

"Employee" is defined as including a "leased worker" but not a "temporary worker."

■■■ [¶ 10] The interpretation of an unambiguous insurance contract is a matter of law. *Colford v. Chubb Life Ins. Co. of America*, 687 A.2d 609, 614 (Me.1996). A contract is only ambiguous if it is reasonably susceptible to two or more interpretations. *Id.* The meaning of the term "employee" in an exclusion such as the one set out above is unambiguous. *See U.S. Fidelity and Guar. Co. v. Rosso*, 521 A.2d 301, 304 (Me.1987) (interpreting exclusion applying to "any employee arising out of and in the course of employment by the insured" as unambiguous) (citing *Lunt v. Fidelity & Casualty Co. of N. Y.*, 139 Me. 218, 28 A.2d 736 (1942)). When a contract provision is unambiguous, its language is interpreted according to its plain, commonly accepted meaning. *Id.* Thus, when a provision excludes an "employee" from coverage, the "determinative issue is whether or not the legal relationship of employer and employee existed" between the relevant parties. *Lunt*, 139 Me. at 223, 28 A.2d 736.

■■■ [¶ 11] [T]he [employment] relationship exists:

'Whenever one person stands in such a relation to another that he may control the work of the latter.... The essential elements are ... control and direction ... of the employment ..., and ... the right to employ ... and ... discharge.... If these elements are wanting, the relationship does not exist.' Conversely it does exist when these named elements are present....

*Rosso*, 521 A.2d at 304 (quoting *Lunt*, 139 Me. at 223–224, 28 A.2d at 739–740). Furthermore, "[t]he definition of employment status almost always takes the form of distin-

guishing an employee from an independent contractor." 1B A. Larson, *The Law of Workmen's Compensation*, §§ 43.20 (1996). In determining whether the party in question is controlled by the insured, i.e., is an employee, or is an independent contractor, we consider eight factors, regarding no one factor as decisive:

(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price;

(2) independent nature of his business or his distinct calling;

(3) his employment of assistants with the right to supervise their activities;

(4) his obligation to furnish necessary tools, supplies, and materials;

(5) his right to control the progress of the work except as to the final results;

(6) the time for which the workman is employed;

(7) the method of payment, whether by time or by job;

(8) whether the work is part of the regular business of the employer.

*Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me.1982) (workers' compensation case); *see Lewiston Daily Sun v. Hanover Ins. Co*, 407 A.2d 288 (Me.1979) (eight factor test applied to interpret employee exclusion in insurance policy); *Peerless Ins. Co. v. Hannon*, 582 A.2d 253, 255 (Me.1990).

■■■ [¶ 12] Soucy contends that genuine issues of material fact remain as to whether he was an employee when injured. The undisputed facts, however, are legally sufficient to determine Soucy's employment status as a matter of law. The factual disputes emphasized by Soucy on appeal are not material to his legal status as an employee.

■■■ [¶ 13] "The term 'independent contractor' presupposes the existence of a binding contract between the parties, for the breach of which a cause of action arises.... The most important point in determining [whether a worker is an employee] is the right of either [party] to terminate the relation without liability." *Murray's Case*, 130 Me. 181, 186–188, 154 A. 352 (1931). Soucy did not have any particular task assigned to

him which he had a right and obligation to complete. Welch orally engaged Soucy to help him complete the Hammond project. There was no contractual obligation on Soucy's part to provide any end product. In fact, there is no evidence that Soucy performed some specialized service apart from the services being provided by Welch. Soucy's "activities were neither ancillary to nor independent of the employer's business in the manner we have historically associated with independent contracting." *Hannon,* 582 A.2d at 255.

[¶ 14] Not only was there no contract between Soucy and Welch for a specialized service, there was no obligation for Soucy to work at all. The understanding between Soucy and Welch was that he would arrive whenever he was done working on the project that he was completing with his father. Welch "had no idea" which day Soucy was going "to show up" and it did not matter to Welch that he might complete the job before Soucy began to work. In addition, once they began work, if the job took longer than Soucy and his co-workers had to work on it, they were not expected or obligated to return to finish the roof. Furthermore, Welch had the right to terminate Soucy's services without incurring contractual liability. Responding to a question concerning what he would do if he became displeased with Soucy's work, Welch stated: "There's no written contracts so he has no legal right to stay if I ask him to leave."

[¶ 15] Soucy was not engaged in an independent business. Since 1993, he worked for his father, full-time, to the extent that work was available. He was paid an hourly wage. He had to check with his father to see if he could work with Welch. Welch testified that he viewed Soucy as an employee of his father. Soucy, Sr. did testify that he considered his son an "independent contractor" and did not treat his son as an "employee" for tax purposes. Similarly, Welch characterized Soucy as an independent contractor for payroll purposes. Soucy himself indicated on his tax return that he was a sole proprietor. These characterizations of Soucy as a "subcontractor" or "independent contractor" for tax purposes alone do not support the proposition that he was an independent contractor under the governing legal standard. Withholding practices may simply reflect an attempt to avoid responsibility for payroll costs including workers' compensation coverage. *West v. C.A.M. Logging,* 670 A.2d 934, 939 (Me.1996).

[¶ 16] There is no evidence that Soucy had the right to employ and supervise assistants. He did not, in fact, employ his brother and Judd. He complied with Welch's request to bring along others who needed work. They were all paid by Welch, by the hour, and Welch controlled their performance, not Soucy. There is no evidence that Soucy had a right to control the progress of his own work on the Hammond project. Although Welch never exercised control over Soucy, he clearly stated that he had the right to tell Soucy and his crew where to work. The "nonexercise [of control] can often be explained by the lack of occasion for supervision of the particular employee, because of his competence and experience." *West,* 670 A.2d at 938 (citations omitted).

[¶ 17] Soucy provided his own personal tools, brought special shovels to the site, and drove his father's truck to the site. "The fact that a worker supplies his own tools is some evidence that he is not a servant." *Restatement (Second) of Agency,* § 220 cmt. k (1957); *see also Murray's Case,* 130 Me. at 186, 154 A. 352. Although Soucy brought his own hand tools and shovels, on a comparative basis Welch provided far more valuable equipment—air guns, pump jacks, scaffolding, and a ladder. If the employer provides tools that are sufficiently valuable to provide an incentive for control and for efficient employment of capital, this factor weighs heavily in favor of employment status. *West,* 670 A.2d at 938.

[¶ 18] The fact that a worker is employed for a short period of time is considered relevant to whether that worker has submitted to the control of an employer. The ultimate issue continues to be, however, whether the worker is under the "essential control or superintendence" of the employer. *Stone v. Thorbjornson,* 656 A.2d 1211, 1213 (Me.1995). A short period of employment

has the most probative value when the worker is paid by the job. The job is then more likely to be considered the worker's job, not that of the putative employer. *Restatement (Second) of Agency*, § 220 cmt. j (1957). Soucy's short period of employment in this case is insufficient to establish his status as an independent contractor, given the fact that he was paid by the hour and given the lack of other evidence supporting such a determination. The court did not err in concluding that North East is entitled to judgment as a matter of law.

The entry is:

Judgment affirmed.

