**2011 ME 52**

**Daniel P. LUKER et al.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued: Nov. 10, 2010.
Decided: May 3, 2011.

Roy T. Pierce, Esq. (orally), Preti Flaherty, LLP, Portland, ME, for Daniel P. Luker, John M. Sullivan, and Simon C. Leeming.

Janet T. Mills, Attorney General, Scott W. Boak, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for the State Tax Assessor.

Catherine R. Connors, Esq., James G. Good, Esq., Jonathan A. Block, Esq.,

Pierce Atwood LLP, One Monument Square, Portland, ME, for Pierce Atwood LLP and Maine Society of Certified Public Accountants.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

Concurrence: ALEXANDER, J.

Dissent: SILVER, J.

GORMAN, J.

[¶ 1] Daniel P. Luker, John M. Sullivan, and Simon C. Leeming (the Attorneys)[1] appeal from the entry of a summary judgment in the Business and Consumer Docket (*Humphrey, C.J.*) in favor of the State Tax Assessor on the Attorneys' petitions for review of tax assessments for the 2004 and 2005 tax years, pursuant to M.R. Civ. P. 80C.[2] The Attorneys contend that the court erred by applying the assignment of income doctrine and taxing them individually on partnership distributions that were paid directly to their respective professional corporations. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] The summary judgment record presented to the court consisted of 171 stipulated facts, in addition to separate statements of material facts filed by each side. The stipulated facts and the record support the following factual determinations. Preti, Flaherty, Beliveau, Pachios & Haley (Preti) is a Maine law firm organized as a limited liability partnership with its principal place of business in Portland, Maine. On May 1, 2002, while Preti was organized as a limited liability company (LLC),[3] each Attorney joined Preti as an LLC member, but each worked out of Preti's Concord, New Hampshire office. Although the Attorneys lived and worked in New Hampshire, as members of a Maine LLC they were required to pay income taxes to the State of Maine on the monies they received from Preti.[4] *See* 36

---

1. Because the Attorneys filed joint tax returns, their respective spouses, Karen A. Slick, Rhonda M. Sullivan, and Alice Leeming are also named parties, although their incomes are not at issue.

2. Each Attorney filed a five-count petition alleging: (1) improper disregard of corporation, (2) absence of Maine source income, (3) failure to modify the apportionment formula, (4) general claim of error, and (5) abatement of penalties. In each case, the parties stipulated to a summary judgment in favor of the State Tax Assessor on the second and third counts, a dismissal of the fourth count, and a summary judgment in favor of the Attorneys on the fifth count. As a result, the only question before the court was whether the State Tax Assessor improperly disregarded the professional corporations and taxed the Attorneys individually.

3. From 2001 until February 2004, Preti was organized as a limited liability company.

Preti changed its organizational structure to a limited liability partnership on March 1, 2004.

4. While they were LLC members in 2002 and 2003, the Attorneys received LLC distributions from Preti. Each Attorney filed a Maine non-resident income tax return but did not apportion any of the LLC distributions as Maine-source income. The State Tax Assessor revised their tax returns to reflect Maine-source income and subsequently issued assessments against the Attorneys with respect to the 2002 and 2003 tax years. The Attorneys filed petitions for judicial review and argued that different apportionment formulas should apply to the distributions on the ground that the Attorneys were individuals rendering "purely personal services." *See* 36 M.R.S. § 5142(6) (2010). The Superior Court (*Jabar, J.*) determined that, because the LLC distributions were derived from business carried on by Preti, the State Tax Assessor prop-

M.R.S.A. §§ 5111(4), 5142(1), (2) (1990 & Supp.2003); 36 M.R.S.A. § 5142(1) (Supp. 2002);[5] *see also Peterson v. State Tax Assessor*, 1999 ME 23, ¶ 7, 724 A.2d 610, 612 ("Maine law imposes an income tax on the portion of income that a nonresident derives from sources within the State.").

[¶ 3] In December 2003, each Attorney formed a New Hampshire professional corporation (PC) to hold his respective interest in Preti. When Preti reorganized as a limited liability partnership in March 2004, the new partnership agreement allowed each partner to transfer his or her partnership interest to a "professional corporation, professional association, or similar entity of which such Partner is the sole stockholder or equity holder." Each Attorney then transferred his respective partnership interest in Preti to his PC, and each PC, through its respective Attorney, signed Preti's partnership agreement. Both the Attorneys and Preti understood that each Attorney would provide legal services to Preti and its clients on behalf of his respective PC. Each Attorney was the sole shareholder and director for his PC, and also served as the PC's president, treasurer, and secretary. None of the PCs ever employed other attorneys, paralegals, legal secretaries, or other full-time support staff in connection with the Attorneys' provision of legal services.

[¶ 4] Although each Attorney was the sole provider of legal services to Preti and its clients on behalf of his respective PC, none of the Attorneys had an employment contract with his PC. Instead, each PC entered into an arrangement through which it was designated a "co-employer" of the Attorney for purposes of Preti profit sharing and 401(k) benefits. In 2004 and 2005, each PC received partnership distributions from Preti, and it is the taxation of these distributions that forms the basis for this appeal. The size of each distribution was determined, in part, by considering the historical performance of the Attorney while individually a member of Preti. In each year, the PCs used these distributions to pay salaries to the Attorneys, and attempted to have the salaries be equal to the distributions. Each PC deducted all payments to its respective Attorney as a cost of doing business, thereby minimizing the PC's taxable income.

[¶ 5] Two of the PCs did file Maine income tax returns in 2004 and 2005, showing minimal taxable income; one of the PCs failed to file a Maine tax return.[6] In November 2006, the Assessor sent an identical letter to each Attorney, stating that because it viewed the creation of the PCs as an attempt to evade Maine individual income taxes, it intended to disregard the PCs and treat the individual Attorneys as if they had received the partnership distributions.[7] The Assessor subsequently issued assessments against each Attorney for income taxes, interest, and penalties for the 2004 and 2005 tax years, and later denied each Attorney's request for reconsideration of the assessments.

---

erly apportioned the income. The Attorneys did not appeal this determination.

5. All of these statutes have been amended since the end of 2003, but none of the amendments are relevant in the present case. *See, e.g.,* P.L.2009, ch. 434, §§ 62, 71 (effective Sept. 12, 2009) (codified at 36 M.R.S. §§ 5111(4), 5142(1) (2010)); P.L.2005, ch. 332, § 20 (effective Sept. 17, 2005) (codified at 36 M.R.S. § 5142(2) (2010)).

6. The sole shareholder-Attorney of that PC filed a Maine individual income tax return that showed no Maine income tax liability.

7. Following this letter, each PC, through its respective Attorney, resigned from Preti as a partner and withdrew from the firm in December 2006. Each Attorney then signed an employment agreement with Preti, becoming an employee of Preti, working out of Preti's New Hampshire office, as of January 2007.

[¶ 6]  Pursuant to M.R. Civ. P. 80C, 36 M.R.S. § 151 (2010), and the Maine Administrative Procedure Act, 5 M.R.S. § 11002 (2010), the Attorneys filed identical individual petitions for review[8] in the Superior Court on October 17, 2007, and the three cases were consolidated in November of 2007.  The first count of each petition asserted that the Assessor erred in disregarding the separate corporate existence of the PCs.  After extensive and contentious discovery, the Assessor moved for summary judgment on this count on March 3, 2009.  The case was subsequently transferred to the Business and Consumer Docket, and by order dated January 22, 2010, the court granted summary judgment in favor of the Assessor on this count.  Applying the assignment of income doctrine and the *Johnson* test, as established in *Johnson v. Comm'r*, 78 T.C. 882 (1982), *aff'd*, 734 F.2d 20 (9th Cir.1984), the court concluded that the Attorneys were the "true earners" of the income at issue, and the Assessor appropriately invoked the assignment of income doctrine to assign the income to each of the Attorneys as individuals.  With support from amici curiae Pierce Atwood LLP and the Maine Society of Certified Public Accountants, the Attorneys appeal from the court's entry of a summary judgment in favor of the Assessor on Count I of their petitions.

## II.  DISCUSSION

[¶ 7]  We review a grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the nonprevailing party.  *Rainey v. Langen*, 2010 ME 56, ¶ 23, 998 A.2d 342, 349.  Summary judgment is appropriate when there is "no genuine issue of material fact that is in dispute," and the moving party is entitled to judgment as a matter of law.  *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825.  In this case, the court's factual findings were based on the undisputed facts presented by the parties, so there can be no question about unresolved issues of material fact.[9]

[¶ 8]  We are asked to determine whether the income received by the professional corporations in the form of Preti partnership distributions was income to those corporations or to the individual Attorneys.  The court, as noted above, determined that the income derived from the Preti partnership distributions was income taxable to the individual Attorneys, based on its application of the assignment of income doctrine.  This doctrine derives from *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930), which is often cited for the "first principle of income taxation": income is taxed to the person who earns it.  *Comm'r v. Banks*, 543 U.S. 426, 433–34, 125 S.Ct. 826, 160 L.Ed.2d 859 (2005) (quotation marks omitted); *United States v. Basye*, 410 U.S. 441, 449, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973) (quotation marks omitted).

[¶ 9]  In *Lucas v. Earl*, the taxpayer contracted with his wife to hold as joint tenants all present and future earnings, including the fees he earned as an attorney.  281 U.S. at 113–14, 50 S.Ct. 241.  Despite this agreement, the Commissioner of Internal Revenue treated all of the attorney fees as income to the taxpayer only, taxing him on the whole amount.  *Id.* at 113, 50 S.Ct. 241.  Upholding the Commissioner's decision, the Supreme Court stat-

---

8. Although the request made by the Attorneys was properly for "review" of the Assessor's decision, 36 M.R.S. § 151 (2010) requires the Superior Court to conduct a de novo hearing and make a de novo determination of the merits of the case.  We review the Superior Court's judgment.

9. The separate statements of material facts, even when challenged, fail to generate a genuine issue of material fact.

ed that the Revenue Acts of 1918 and 1921 "tax[ed] salaries to those who earned them and provide[d] that the tax [could not] be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it." *Id.* at 114–15, 50 S.Ct. 241.

[¶ 10] The assignment of income doctrine has been applied to prevent a taxpayer from evading taxation by anticipatorily assigning income earned by the taxpayer to another person or entity. *See Basye,* 410 U.S. at 449–53, 93 S.Ct. 1080; *Lucas,* 281 U.S. at 114–15, 50 S.Ct. 241. While it is entirely appropriate for a taxpayer to endeavor to minimize or avoid paying taxes by creating corporations and employing arms-length contractual relationships, the corporate form or structure and the contracts defining the relationships must have some substance. *See Lerman v. Comm'r,* 939 F.2d 44, 54 (3d Cir. 1991). As long as the purpose of a corporation "is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." *Moline Props., Inc. v. Comm'r,* 319 U.S. 436, 439, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943); *cf. Theberge v. Darbro, Inc.,* 684 A.2d 1298, 1301 (Me.1996) (stating that a corporation is a separate legal entity); *LaBelle v. Crepeau,* 593 A.2d 653, 655 (Me. 1991) (same). A taxpayer cannot minimize or avoid taxation solely by creating a separate taxable entity to receive income, however, as the creation alone will not guarantee that the entity is deemed to have earned the income in question.

[¶ 11] The general principle mandating that corporations be recognized as separate, taxable entities from their owners creates some tension with the requirement

that income be taxed to the party who earns it. Recognizing that tension, in 1982 the United States Tax Court noted that, in the corporate context, simply identifying who earned the income may be inadequate to allow a determination of how the income should be taxed because corporations can act, and thus earn income, only through their agents. *Johnson,* 78 T.C. at 890–91; *see also Haag v. Comm'r,* 88 T.C. 604, 611 (1987); *cf. State v. Placzek,* 380 A.2d 1010, 1015 (Me.1977) (recognizing that agents of a corporation may be held criminally responsible for crimes committed in the name of the corporation). That inadequacy is highlighted when corporations with a single owner and employee are considered. In *Johnson,* the Tax Court set forth a test to be used in determining the true earner of income received by a corporation when an employee provides services on behalf of a corporation:

> An examination of the case law from *Lucas v. Earl* hence reveals two necessary elements before the corporation, rather than its service-performer employee, may be considered the controller of the income. First, the service-performer employee must be just that—an employee of the corporation whom the corporation has the right to direct or control in some meaningful sense. Second, there must exist between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position.

*Johnson,* 78 T.C. at 891 (footnote omitted) (citation omitted).[10]

[¶ 12] In *Johnson,* the taxpayer was a professional basketball player who had contracted to provide his services to a corporation. *Id.* at 883–84. The Tax

---

**10.** The first prong of the *Johnson* test is similar to the definition of "common law employees" inherent in the federal tax regulations.

*See* Treas. Reg. § 31.3121(d)–1(c)(2) (as amended in 1980).

Court assumed, for the sake of argument, that the contract gave the corporation a right to control the taxpayer's services, and thus determined that the first prong was satisfied. *Id.* at 891–92. The Tax Court, however, concluded that the taxpayer could not meet the second prong of the test because the basketball team he played for "refused to sign any contract or agreement with any person or entity other than [the taxpayer]." *Id.* at 893; *but see Sargent v. Comm'r,* 929 F.2d 1252, 1258–61 (8th Cir.1991) (holding that professional hockey players' personal service corporations were the taxable entities when the players "entered into bona fide arms lengths [employment] agreements" with their respective corporations, and the team paid the corporations, rather than the players).

[¶ 13] In this case, the court applied the *Johnson* test after determining that the test struck the appropriate balance between the principles articulated in *Moline* and *Lucas.* The court reasoned,

> [T]he assignment of income doctrine as it is applied under the *Johnson* test respects the separate corporate form so long as it is the corporation, rather than the individual, that controls the services provided and the income derived from those services such that the corporation may truly be deemed the "true earner."

■ [¶ 14] The Attorneys argue that the *Johnson* test is inapplicable to the income at issue here because it is income received in the form of partnership distributions, rather than income received for personal services. Their argument, however, places undue emphasis on the form in which income is received and deemphasizes the manner by which income is earned, departing from the "first principle of income taxation" that income be taxed to the party who earns it. More than twenty years ago, the Tax Court applied the assignment of income doctrine in a situation nearly identical to the present case. In *Haag v. Commissioner,* the taxpayer, a physician, was a general partner of a medical practice who formed a PC, assigned his interest in the partnership to the PC, and entered into an employment contract with the PC. 88 T.C. at 605–07. Although the Commissioner of Internal Revenue reassigned the income received by the PC from the partnership distributions to the physician as an individual, the Tax Court, applying the *Johnson* test, concluded that the physician was in fact an employee of his PC and the PC was the true earner of the income from the partnership. *Id.* at 610–14. The Tax Court reasoned that the employment agreement gave the PC the right to control the physician's services, and that the medical practice recognized the PC as the entity through which the physician provided medical services to the practice and its patients. *Id.* at 612–13. In this case, the Attorneys attempted to do precisely the same thing that Dr. Haag did—create PCs with the right to control them, assign their interests in the partnership to their respective PCs, and then argue that the PCs were the "true earners" of income in the form of partnership distributions. Contrary to the Attorneys' assertions, the *Johnson* test does apply.

[¶ 15] The first prong of the *Johnson* test requires that each Attorney be considered "an employee of the corporation whom the corporation has the right to direct or control in some meaningful sense." *Johnson,* 78 T.C. at 891. Although the presence of an employment contract is not always dispositive on the issue of control, the existence of an employment contract is frequently discussed as demonstrating control. *See Leavell v. Comm'r,* 104 T.C. 140, 154 (1995); *Idaho Ambucare Ctr., Inc. v. United States,* 57 F.3d 752, 755 (9th Cir.1995). Here, there was no employment contract between any

Attorney and his respective professional corporation. In the absence of an employment contract, it was essential for the Attorneys to demonstrate that the professional corporations exercised or had the right to exercise control over the Attorneys. *See Idaho Ambucare Ctr., Inc.,* 57 F.3d at 755 ("[T]he lack of a written contract between the individual and his professional corporation is not fatal to the assertion that the professional corporation had the right to control that individual."). We have previously stated that control is the hallmark of an employment relationship. *See Rainey,* 2010 ME 56, ¶ 15, 998 A.2d at 346–47; *N.E. Ins. Co. v. Soucy,* 1997 ME 106, ¶ 11, 693 A.2d 1141, 1144; *cf.* Treas. Reg. § 31.3121(d)–1(c)(2) (as amended in 1980) (stating that an employment relationship "exists when the person for whom services are performed has the right to control and direct the individual who performs the services").

[¶ 16] Although the Attorneys argue that the PCs' right to control "necessarily exists" because there is an employment relationship between each of the Attorneys and his respective PC, they provided no documentation or other proof setting forth job expectations, employment terms, level of compensation, or any other evidence by which a court could conclude that the PC determined—or could determine—the manner or means by which the Attorneys provided their legal services to Preti. At summary judgment, the court noted that the PCs had presented no evidence of "any meaningful control [by the PCs] over the [Attorneys], their services, or their income." Unlike the professional corporation in *Haag,* there is no evidence that the PCs in this case had the right to control the provision of services, and thus the earning of income, by the Attorneys. Be-

cause the professional corporations exercised no control over the Attorneys, we conclude that the court did not err in determining that the partnership distributions should be attributed to the individual Attorneys for Maine income tax purposes.[11] We therefore hold that each Attorney individually, and not his respective PC, earned the income from the partnership distributions in 2004 and 2005.

The entry is:

Judgment affirmed.

ALEXANDER, J., concurring.

[¶ 17] I concur in and join the Court's opinion affirming the State Tax Assessor's decision that the attempted corporate structuring of partnership distributions sent from Preti's principal place of business in Portland did not avoid attribution of the partnership distributions as income to the individual New Hampshire attorneys for Maine income tax purposes.

[¶ 18] I write separately to emphasize that our decision today should not be read to hold that persons who live and work outside the state and generate income outside the state for Maine-based businesses must have their out-of-state earnings treated as Maine income for Maine income tax purposes. Interstate businesses headquartered in Maine, whether the business is law practice, retail sales, construction, or any other activity that generates income outside the state, do not, by having their headquarters in Maine, subject all their employees who live and work outside the state to Maine income taxation on earnings generated in other states.

[¶ 19] The reason for the result here is the litigants' choice to focus on structuring corporations to receive income distribu-

---

11. Because of this conclusion, there is no need to analyze the facts of this case under the second prong of the *Johnson* test.

tions, raising issues of law akin to those presented in attempts at corporate structuring for tax avoidance under federal income tax law, which presents no interstate taxation issues. Thus, the briefs by Luker and the amici curiae focus their arguments on precedents such as *Moline Properties v. Commissioner,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943); *Sargent v. Commissioner,* 929 F.2d 1252 (8th Cir. 1991); *Johnson v. Commissioner,* 78 T.C. 882 (1982), *aff'd,* 734 F.2d 20 (9th Cir. 1984); and *Johnson v. United States,* 698 F.2d 372 (9th Cir.1982), which address corporate structuring efforts to achieve individual income tax avoidance. Under the arguments citing these precedents, it would appear to make little difference whether the corporation receiving the partnership distributions was located in Concord or Calais.

[¶ 20] Luker's original complaint included claims that (1) the New Hampshire partners' income was not Maine source income, and thus not subject to Maine income taxation; and (2) an apportionment formula exempting most of the income from Maine income taxation should have been applied. As the Court's opinion indicates at ¶ 1 n. 2, those issues were removed by stipulation from the case and from this appeal. Thus, based on the parties' litigation strategy, this opinion does not address taxation of employees of Maine-based businesses who live, work and generate income for the business from sources outside the State of Maine.

SILVER, J., dissenting.

[¶ 21] I respectfully dissent from the opinion of the Court. Because the attorneys formed valid and legal professional corporations under New Hampshire law, we should not pierce that corporate form to tax the attorneys individually.

[¶ 22] New Hampshire law enables a single attorney to operate in a corporate form with all the attributes of a corporation. *See* N.H.Rev.Stat. Ann. §§ 294–A:1 to :31 (2010). The law further provides that the corporation may form a partnership with other legal entities. *See id.* § 294–A:4. No statutory requirement exists for a New Hampshire professional corporation to have an employment contract for its sole professional employee, and similarly there is no requirement that the New Hampshire professional corporation do business only in New Hampshire. The New Hampshire attorneys conformed to New Hampshire corporate law by establishing professional corporations that became partners in the Preti Flaherty partnership. *See id.*

[¶ 23] Corporations did not exist at common law and are entirely statutory creatures. A corporate form of governance allows a corporate form of taxation. This has been true in the Maine legal world since Maine first allowed professional associations in 1969. *See* P.L.1969, ch. 411 (effective Oct. 1, 1969).

[¶ 24] The dispute here arises because the New Hampshire attorneys have crossed state borders and their professional corporations became partners in a Maine LLP. An additional and more important factor is that New Hampshire has no personal income tax and Maine does. No one is alleging a violation of Maine or New Hampshire law by this corporate arrangement. However, the Assessor seeks to disregard the corporate form for tax purposes. The majority agrees with the Tax Assessor because "the professional corporations exercised no control over the attorneys."

[¶ 25] As long as the New Hampshire attorneys were licensed in New Hampshire to practice law, each of them could and did form a corporation to do business. *See* N.H.Rev.Stat. Ann. §§ 294–A:2, :8. As long as they remain the sole employees of

their corporations, no statute or announced tax regulation requires that they do more. This is because each attorney remains personally liable for his malpractice and is not shielded by the corporation for such malpractice. *See id.* § 294–A:17(II). Traditional corporations, in contrast, limit the liability of the shareholders and employees in almost all circumstances.

[¶ 26] The United States Supreme Court has long allowed assignment of income to corporations. *See Moline Props., Inc. v. Comm'r,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). The Court observed in *Moline:*

> The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.

*Id.* at 438–39, 63 S.Ct. 1132 (footnotes omitted). The corporate form may be disregarded only "where it is a sham or unreal." *Id.* at 439, 63 S.Ct. 1132. This principle of taxing the corporation as a separate entity has been extended by federal courts to professional corporations. *See, e.g., Dennis Katz, D.D.S., P.C. v. Comm'r,* 83 T.C.M. (CCH) 1629 (2002); *Foglesong v. Comm'r,* 621 F.2d 865, 872–73 (7th Cir. 1980) (stating that the tax court's emphasis on the absence of a written employment contract was "[t]he elevation of form over substance," and further noting that " 'the absence of any special exclusion of such corporations from corporate taxation ... indicate that to some extent Congress has sanctioned the incorporation of service businesses for tax purposes' " (quoting Battle, *The Use of Corporations by Persons who Perform Services to Gain Tax Advantages,* 57 Taxes 797, 802 (1979))).

[¶ 27] In this case, the New Hampshire professional corporations have offices in New Hampshire and primarily practice in New Hampshire. They generate most of their income in New Hampshire from non-Maine clients. The professional corporations became partners in the Maine law firm and received a partnership distribution from the Maine firm. This is a common payment scheme for partners in law firms. Partnership has its status and legal responsibilities. *See* 31 M.R.S. §§ 1–1502 (2010). Preti Flaherty entered into a contract with the professional corporations, and nothing more is required. This is the indicium of "control" necessary to satisfy *Johnson v. Commissioner,* 78 T.C. 882, 891 (1982), *aff'd,* 734 F.2d 20 (9th Cir.1984). There is no reason to add a requirement onto New Hampshire corporate law.

[¶ 28] Piercing the corporate form of a business can only happen when the party attempting to pierce the veil establishes that "(1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Blue Star Corp. v. CKF Props., LLC,* 2009 ME 101, ¶ 43, 980 A.2d 1270, 1280. This Court, like other courts, is "generally reluctant to disregard the legal entity and will cautiously do so only when necessary to promote justice," *Johnson v. Exclusive Props. Unlimited,* 1998 ME 244, ¶ 5, 720 A.2d 568, 571 (quotation marks omitted), and "we have been loath to allow taxpayers to disclaim the corporate form to avoid paying taxes," *Sturtevant v. Town of Winthrop,* 1999 ME 84, ¶ 21 n. 8, 732 A.2d 264, 270. We should stay true to our policy of disregarding the corporate form only in limited circumstances, even when that policy benefits the shareholders. Here, the professional cor-

porations operated exactly as professional corporations are designed to do.

[¶ 29] In this case, the attorneys met all the requirements of the New Hampshire corporate form. They did not abuse or misuse the corporate form of doing business. There is no claim that they avoided any governance responsibilities or avoided liability improperly. No client or creditor disputes the use of the corporate form of doing business. There is also no claim of an inequitable result from using the corporate form of doing business.

[¶ 30] *Lucas v. Earl* is inappropriate to use as precedent for the analysis of tax liability here. In *Lucas v. Earl*, the taxpayer attempted to split with his non-attorney wife the income he made as an attorney. 281 U.S. 111, 113–14, 50 S.Ct. 241, 74 L.Ed. 731 (1930). This is dissimilar to the facts before us because the attorneys here operated within the structure of the professional corporation, which they were allowed to do. The professional corporations were also partners in Preti Flaherty pursuant to agreement. *Lucas* did not involve corporate law. In our case the income was earned by the professional corporation and distributed by the partnership to the professional corporation.

[¶ 31] This matter is also distinguishable from *Johnson* because in that case the basketball team did not sign a contract with the professional corporation. *See Johnson*, 78 T.C. at 885. Johnson played for the professional team, but his professional corporation did not have a contractual relationship with the team. *Id.* In our case, the professional association has a contractual relationship with the firm and the partnership distribution went directly to the professional corporation.

[¶ 32] Interpreting the law in this manner does not violate any principle of tax policy. Rather, what I propose is in line with "[t]he first principle of income taxation" that income be taxed to the party who earns it. The income was earned by the professional corporation and distributed to the professional corporation by the firm.

[¶ 33] The issue of a written employment contract is a "red herring." Requiring a written contract elevates form over substance. A corporation can employ individuals. New Hampshire law does not require employment contracts. Why should an employment contract be required for the attorney employee? The professional corporation is limited by the Preti Flaherty agreement to representing clients of the firm. The attorney is further limited in his work by the New Hampshire bar rules.

[¶ 34] The majority opinion will force New Hampshire lawyers who are partners of Maine interstate law firms to give up their partnership status and remain employees, or face Maine income tax. This has negative ramifications for these lawyers and will inhibit Maine firms from merging with firms in other states. In order to remain associated with Maine firms, out-of-state attorneys will be forced to give up the major benefits of partnership. This is the case in spite of corporate status, which allows New Hampshire attorneys to operate as they did in this matter and fully comply with New Hampshire law. The majority opinion also jeopardizes the tax status of hundreds of professional corporations in Maine by authorizing the State Tax Assessor to look past the corporate form of many of these entities.

[¶ 35] The practice of law is changing and now crosses state borders frequently. We are moving into a new era of practice both domestically and internationally. As long as state legislatures allow a corporate form of practicing law, our Tax Assessor must acknowledge this cross-border type of practice. There is no reason here to pierce the corporate form of business and

declare that form inappropriate for tax purposes.

[¶ 36] For these reasons, I disagree with the conclusion of the majority.